# Exhibit 1

STATE OF NORTH CAROLINA     General Court of Justice-District
MACON COUNTY     Superior Court Division

Plaintiffs,

ROBERT STEWART, an individual,
and others similarly situated.

Vs.     Case No. 11-CUS-410

Defendants,

LEGAL HELPERS DEBT RESOLUTION, PLLC,
a Nevada limited liability company;
MACEY, ALEMAN, HYSLIP & SEARNS, an
Illinois general partnership;
CDS CLIENT SERVICES, INC., a California
corporation;
JEFFREY HYSLIP, an individual;
LINDA CAROL, an individual.

_____/

## COMPLAINT FOR CLASS ACTION

### Introduction

1. This is an action on behalf of a class of individuals for declaratory relief, rescission , and
   damages, including punitive damages resulting from illegal debt adjusting in violation of
   section 14-423, N.C. Gen. Stat., from unfair and deceptive practices in violation of
   section 75-1.1, N.C. Gen. Stat, from legal malpractice, negligence and consumer fraud.

2. The debt settlement activities of the defendants are illegal in that they involved a
   contract for debt settlement services with a debt adjuster which provides for an advance
   fee to be collected from consumers prior to completion of debt adjusting services or the
   rendering in full of all agreed upon services. See section 14-423(2), N.C. Gen. Stat.

3. The Defendant LHDR committed fraudulent, unfair and deceptive practices by making

1

material representations and committing unfair practices which were misleading and deceptive and induced the members of the class to enter into illusory, unconscionable and illegal contracts for debt settlement.

4. The Defendant CDS committed unfair and deceptive practices by providing or endeavoring to provide illegal debt adjusting services to members of the class.

5. The Defendant LHDR, MACEY ET AL, an Illinois law firm and Defendant Jeffrey Hyslip practiced law in the state of North Carolina in a negligent manner which caused damages to the individuals of the class defined below.

<u>Parties and Jurisdiction</u>

6. Robert Stewart is a resident of Macon County, North Carolina, and a real party in interest to the causes of action below. He is hereinafter referred to as the "Plaintiff".

7. Legal Helpers Debt Resolution, LLC, a/k/a Legal Helpers Debt Resolution, PLLC, hereinafter and above "LHDR", is a Nevada limited liability company having a registered office in the State of North Carolina.

8. Macey, Aleman, Hyslip & Searns, hereinafter "MACEY ET AL" is a general partnership with its principal office in the state of Illinois.

9. Jeffrey Hyslip, hereinafter, "HYSLIP" is an individual residing in Illinois, a partner of MACEY ET AL, and a manager and member of LHDR.

10. Linda Carol is an individual residing in North Carolina and a member of LHDR.

11. CDS Client Services, Inc, hereinafter and above "CDS", is a California corporation, not having a registered office in the State of North Carolina.

12. The contracts which are the subject of this action were entered into in North Carolina.

2

13. This action is for damages for an amount which exceeds $10,000.

## The Class

14. The members of the proposed class to be represented by the Plaintiff consist of individuals who entered into contracts in North Carolina with LHDR which:

    a) Are dated between June 9, 2007 to the present.

    b) Provide for the payment of an advance fee for debt adjusting services, and

    c) Purport to be a contract for legal services with LHDR.

15. The members of the class have an interest in several of the same issues of law and fact. The facts and issues of law alleged below specific to the Plaintiff are representative of the issues which are common to all members of the class.

16. The common issues of law and fact among the proposed class members predominate over issues affecting only individual class members.

17. The members of the class are sufficiently numerous as to make an action under Rule 23, N.C. Rules of Civ. P. superior to all other methods of adjudication of the claims of the members.

18. The Plaintiff will fairly insure the adequate representation of the members of the class because the particular facts of his claims and defenses are typical of the claims and defenses of the proposed class.

19. The individual Toney Giles, a resident of Macon County, North Carolina, contracted with LHDR for debt adjusting services in 2011, qualifies as a member of the class and is prepared to participate in this action as a member of the class.

3

## Factual Allegations

20. LHDR holds itself out as a law firm which represents debtors who wish to become debt free by negotiating a final payment in full, or settlement, of their debts.

21. LHDR solicits clients who are known to have debts through direct mail, internet marketing and a network of financial advisor representatives.

22. LHDR contracts with financial advisor representatives to provide much of the "front end" sales work of intaking and signing debtors up to purportedly begin an attorney client relationship with LHDR for the settlement of debts.

23. LHDR pays a fee to the financial advisor representatives to intake debtor clients.

24. On or before June 1, 2010, the Plaintiff received a direct mail solicitation from LHDR.

25. After reviewing the direct mail solicitation, the Plaintiff called the toll free number on the solicitation and was connected with the individual Eric Chung who represented himself as a financial advisor working for Armored Financial Services out of Minneapolis, MN.

26. Eric Chung is not an attorney.

27. In a matter of hours, Mr. Chung had received the Plaintiff's personal credit and financial information, and recommended to the Plaintiff to engage LHDR by entering its debt settlement program.

28. The Plaintiff followed the direction of Mr. Chung and on or about June 1, 2010, LHDR and the Plaintiff entered into an agreement entitled "Attorney Retainer Agreement", hereinafter referred to as the "Contract". A copy of the Contract is attached hereto as Exhibit A.

4

29. The Contract was part of Mr. Chung's "submission checklist", a copy of which is attached hereto as Exhibit B. Upon information and belief, the submission checklist is a document prepared by and provided by LHDR to guide its financial representatives in engaging clients for legal services.

30. The sole purpose of Plaintiff entering into the Contract was LHDR's promise to "negotiate" and "attempt to enter into settlements" with the creditor of the Plaintiff, Capitol One, by "supervising" CDS' negotiation with Capitol One on the Plaintiff's behalf which would permit the Plaintiff to pay a maximum of 65% of the total outstanding indebtedness in full satisfaction of the Plaintiff's indebtedness to Capital One. See Paragraph III of the Contract.

31. The Contract provides for advance fees, that is, a fee collected prior to the completion of debt adjusting services. First, the Contract obligates the Plaintiff to pay LHDR an "initial flat fee retainer" of $500. Second, it obligates the Plaintiff to pay LHDR a $50 per month "maintenance fee". Third, it obligates the Plaintiff to pay fifteen percent (15%) of the total scheduled debt to be settled which is to be forwarded to a separate entity, CDS. All of these payments are paid before any settlement benefits accrue to the Plaintiff or before any debt settlement is accomplished.

32. Based upon the Contract, LHDR does not attempt to settle any debts until the Plaintiff has paid all payments under the Contract's "program". See Paragraph XII of the Contract ("Client must have completed the program...prior to LHDR having an opportunity to settle all accounts...").

33. LHDR relies upon and uses CDS to handle negotiations for debt adjusting under the

5

Contract.

34. LHDR's promises and practices in Paragraphs 30 through 33 above are "debt adjusting" as defined by section 14-423(2), N.C. Gen. Stat.

35. LHDR is a debt adjuster because it is an entity who engages in or offers to engage in the practice or business of debt adjusting in North Carolina and for North Carolina consumers. Section 14-423(1), N.C. Gen. Stat.

36. CDS is a debt adjuster because it is an entity who engages in or offers to engage in the practice or business of debt adjusting for North Carolina consumers. Section 14-423(1), N.C. Gen. Stat.

37. No representative of LHDR or CDS communicating with the Plaintiff, or actively participating in the Plaintiff or class member's matter pursuant to the Contract or similar contract is an attorney at law licensed to practice in North Carolina.

38. LHDR represented to the Plaintiff and members of the class that it was a law firm authorized to provide legal services in North Carolina.

39. To attempt to skirt the requirements of section 14-423 *et seq*, N.C. Gen. Stat., LHDR recruits attorneys in every state through internet advertising, e.g. www.craigslist.com to serve as "partners" and qualifying attorneys for LHDR. They promise to such qualifying attorneys a lucrative referral of clients who may have claims relating to debt collection activities.

40. As of May 4, 2011 the North Carolina attorney qualifying LHDR, a foreign professional limited liability company, to provide legal services in North Carolina is the individual Linda Carol. Attached hereto as Exhibit C is a copy of LHDR's Application for

6

Certificate of Authority showing Ms. Carol as the qualifying attorney for LHDR.

41. The legal services represented in the Contract to be provided by LHDR, are required by law to be performed by Ms. Carol or another attorney licensed in North Carolina. See sections 55B-8 and 55B-16(a)(3), N.C. Gen. Stat. However, the services provided to the Plaintiff and others similarly situated through LHDR were not actively performed by an attorney licensed to practice law in North Carolina.[1]

42. The Plaintiff has never communicated with or received any communication from Ms. Carol or any attorney licensed in North Carolina. The Plaintiff was never informed by any representative of LHDR at any time that Ms. Carol or any other North Carolina attorney was his attorney under the Contract.

43. Defendant Jeffrey Hyslip, an LHDR attorney not licensed to practice in North Carolina, purported to represent the Plaintiff through the Contract. Attached hereto as Exhibit D is a Letter of Representation from Mr. Hyslip to Capitol One affirming Mr. Hyslip's legal representation of the Plaintiff.

44. No manager of LHDR is an attorney licensed to practice law in North Carolina in violation of sections 55B-16(2) and 55B-4(3) N.C. Gen. Stat. Attached as Exhibit E is LHDR's organization information as accessed from the Nevada secretary of state's website on May 25, 2011.

45. Prior to May 4, 2011, LHDR had not obtained a certificate of authority to practice law as a professional limited liability company in violation of section 55B-10, N.C. Gen. Stat.

---

[1] *See* Rule 5.5(c)(2)(D), Revised Rules of Professional Conduct for the North Carolina Bar. *See also, Id.,* comment [7], the qualifying attorney "...may not serve merely as a conduit for an out-of-state lawyer, but must actively participate in and share actual responsibility for the representation of the client."

7

Accordingly, it was not authorized to practice law in North Carolina, and each attorney performing any legal services, in whole or in part, through LHDR was required to be an attorney duly licensed in North Carolina. Section 84-4, N.C. Gen. Stat.

46. The person signing the application for the certificate of authority for LHDR to transact business in the State of North Carolina, Jeffrey Hyslip is not an attorney licensed to practice law in North Carolina in violation of sections 55B-4(1) and 57C-2-01, N.C. Gen. Stat. A copy of LHDR's application for certificate of authority showing Mr. Hyslip's signature is attached hereto as Exhibit C.

47. Even after May 4, 2011, despite receiving its certificate of authority, LHDR delivered legal services in violation of law because not one of its members (the equivalent of shareholders in a corporation) were licensees of the licensing board in this State, and legal services were not rendered only through its officers, employees and agents who are duly licensed in North Carolina. *See* sections 55B-6(a), 55B-2(2) and (3), 55B-16(2) and (3), 55B-8, N.C. Gen. Stat.[2]

48. Upon information and belief, under a substantial number of LHDR's advance fee contracts financially pressured clients cannot and do not make their scheduled monthly payments under the Contract and therefore lose all advance amounts paid to LHDR and CDS without receiving any debt settlement results or benefits. This fact, which is necessary to prevent unjustified expectations based upon LHDR's representations is

---

2  An attorney not licensed in North Carolina may provide legal services through an authorized foreign professional limited liability company in North Carolina, however at least one member/owner, one director/manager and one officer of such PLLC must be a North Carolina lawyer *and* an associated North Carolina lawyer (perhaps the PLLC member, officer, or director) must actively participate in the legal representation in conjunction with the non-licensed lawyer. See Rule 5.5(c)(2)(D) and comment 7, Revised Rules of Professional Conduct for the North Carolina Bar and section 55B-8, N.C. Gen. Stat.

8

notably missing from any communication to the Plaintiff.

49. The legal services provided by LHDR under the Contract, consisted of one letter attached hereto as Exhibit D, were therefore *de minimis*, and accordingly its promises under the Contract were illusory. At most, LHDR provided clerical and administrative services to the Plaintiff, while CDS was to do the primary work of negotiating with Capitol One.

50. LHDR's method of debt adjusting through an Illinois law firm is an attempt to qualify as exempt from the prohibition of debt adjusting in North Carolina. *See* section 14-426(6), N.C. Gen. Stat. However, LHDR is not exempt because as set forth in paragraphs 37 through 47 above, the purported legal services to the Plaintiff under the Contract and to others similarly situated were not the services actively provided by an attorney licensed to practice in North Carolina or by a foreign professional limited liability company authorized to do business in North Carolina.

51. From June 9, 2007 to May 4, 2011, the legal services provided to the Plaintiff and others similarly situated through LHDR were the unauthorized practice of law and are therefore illegal pursuant to section 84-8, N.C. Gen. Stat.

52. To date, the Plaintiff has paid the total sum of $8,658.36 under the Contract, and has received no offer to settle the debts listed under the Contract.

53. When the Plaintiff contacts LHDR regarding the progress of his debt settlement, the non-attorney agents with whom he speaks inform him that LHDR will do nothing until he has paid all payments under the Contract, a total of $25,975.20, which is an amount equal to 60% of his original total outstanding debt owed to Capitol One.

9

## COUNT I: DECLARATORY RELIEF

54. Plaintiff adopts by reference Paragraphs 1 through 53 from above as if fully set forth herein.

55. This is an action for declaratory relief under Article 26, Chapter 1, N.C. Gen. Stat.

56. The services provided by CDS and LHDR under the Contract or any contract with North Carolina residents from June 9, 2008 to the present consist of illegal debt adjusting.

57. The services provided by LHDR under the Contract or any contract from June 9, 2008 to May 4, 2011 consist of the illegal unauthorized practice of law.

58. The Contract, in its material purpose, effect and provisions, is an agreement to perform illegal activities and the entire Contract and all of its terms are therefore *void ab initio*.

59. Any and all contracts entered into by members of the class which provide for illegal debt adjusting activities in North Carolina are *void ab initio*.

WHEREFORE, the Plaintiff respectfully demands a judgment declaring the Contract attached hereto and all contracts of class members with LHDR *void ab initio*, and of no legal effect among and between the Plaintiff, class members, LHDR and CDS, for reasonable costs of this action and such other further supplemental relief as is just and proper.

## COUNT II: RESCISSION OF AN ILLEGAL and UNCONSIONABLE CONTRACT (LHDR)

60. Plaintiff adopts by reference Paragraphs 1 through 59 from above as if fully set forth herein.

61. In exchange for the total sum of $8,658.36 paid under the Contract with LHDR, the Plaintiff has received the following:

    a) an uncertain possibility that he may receive a debt reduction of 15% of his Capitol One debt two years hence,

10

b) an increased liability to Capitol One exceeding $13,000 representing additional interest and fees which continues to grow daily,

c) exposure to collection litigation and collection efforts at any time from Capitol One.

62. To perform the simple process of inquiring of the Plaintiff's creditors regarding the settlement of debts and one letter, LHDR steered the Plaintiff to engage it for legal services and the services of CDS which charges 15% of outstanding debt. It is unconscionable that such action was reasonably necessary and that the Plaintiff actually received those results set forth in Paragraph 61 above in exchange for payments totaling $8,658.36. It is unconscionable that LHDR would guide the Plaintiff, ostensibly its client, to execute the Contract with its high fees and costs for the simple matter of "negotiating" a settlement with his creditors.

63. The unconscionability and illegality of the Contract existed on the effective date of the Contract.

64. The Plaintiff and others similarly situated have been damaged by LHDR's illegal and unconscionable debt adjusting activities under the Contract in the amount of the total of all monies paid under contracts with LHDR, and the interest and penalties accruing from creditors from and after June 1, 2010 as it relates to the Plaintiff, or from and after the effective date of other contracts entered into by others similarly situated after June 9, 2008.

65. The Plaintiff and others similarly situated should be restored to their financial conditions prior to time of entering into contracts with LHDR.

WHEREFORE, the Plaintiff demands judgment against LHDR declaring the Contract and the

11

contracts of others similarly situated to be void for illegality and unconscionability, rescinding the Contract and contracts with LHDR awarding the Plaintiff damages and costs, and for such other relief as is just and proper.

<u>COUNT III: UNFAIR AND DECEPTIVE TRADE PRACTICES (LHDR)</u>

66. Plaintiff adopts by reference Paragraphs 1 through 65, from above as if fully set forth herein.

67. This is an action under section 75-16, N.C. Gen. Stat. applicable to all contracts for debt adjusting by LHDR in North Carolina from June 9, 2007 to the present.

68. LHDR made representations and/or committed acts which were unfair, deceptive and misleading. The following acts and representations pertain to the Plaintiff, but are representative of and substantially similar to acts and representations made to others similarly situated. Such acts and/or representations included but are not limited to the following:

 a) That the Plaintiff was represented by an attorney licensed to practice law in North Carolina,

 b) That a North Carolina attorney would actively participate in the Plaintiff's debt settlement matter,

 c) Practicing law through a professional limited liability company which did not have authority to practice law in North Carolina.

 d) Failing to disclose the identity of or connect the Plaintiff with Ms. Carol or any other North Carolina Attorney licensed to practice law in North Carolina,

 e) Violating sections 84-4, 55B-8, 55B-10, and 55B-16(a)(3), N.C. Gen. Stat by providing legal services for fees to North Carolina residents through attorneys not

12

licensed to practice law in North Carolina.

f) Committing illegal debt adjusting activities in North Carolina,

g) Charging and collecting $50 per month from the Plaintiff for "maintenance" when no such "maintenance" was necessary or reasonable and exceeded the legal limitation,

h) Charging and collecting an advance debt adjusting fee of fifteen percent (15%) of the entire outstanding principal balance of the Plaintiff's scheduled debts,

i) Advising the Plaintiff to stop paying his legal creditors, while at the same time disclaiming in fine print any legal services which would be necessary following the likely result of ceasing payment to creditors, e.g. collection lawsuits and deleterious credit reports.

j) Creating the unjustified expectation that the Plaintiff was represented by an attorney while disclaiming in fine print all legal services for which attorneys are normally retained by debtors including representation in collection lawsuits or court proceedings, filing for bankruptcy protection, or preventing direct creditor communications to a debtor.

k) Representing to the Plaintiff that it was successful in settling its clients' debts for amounts which exceeded a 50% reduction in total principal balance. See schedule attached as Exhibit F, which was provided to Plaintiff by LHDR. Even if such statements were true, the statements were misleading because they were presented so as to lead a reasonable person to form an unjustified expectation that the same results could be obtained for other clients in similar matters without reference to the specific

13

factual and legal circumstances of each client's case.[3]

l) Not depositing client funds into a fiduciary account or general trust account of LHDR or any law firm, which account is maintained at a bank in North Carolina or a bank with branch offices in North Carolina as required by Rule 1.15-2, Rules of Professional Conduct of the North Carolina State Bar.

m) Collecting and charging a clearly excessive amount for expenses, e.g. the 15% fee to CDS for debt adjusting activities. *See* Rule 1.5(a), Rules of Professional Conduct of the North Carolina State Bar.

n) Failing to comply with 27 N.C.A.C. 1E, Section .0200, *et seq*, Rules of the North Carolina Bar relating to interstate law firms, which created false impressions and obscured liability to individuals endeavoring to practice law through LHDR.

o) Sharing legal fees and paying referral fees to non-lawyers and entities who are not associated with a not-for-profit referral service which complies with Rule 7.2 of the Revised Rules of Professional Conduct for the North Carolina Bar.

p) Offering to the Plaintiff and accepting a contract for legal services before any attorney consultation with the Plaintiff.

69. The Plaintiff and others similarly situated have been damaged by the unfair and deceptive acts of LHDR.

70. Pursuant to section 75-16, N.C. Gen. Stat., the Plaintiff and others similarly situated are entitled to recover three times the actual damages suffered resulting from LHDR's unfair

---

3   *See* Rule 7.1(a)(2) and comment [3], Revised Rules of Professional Conduct for the North Carolina Bar relating to creating unjustified expectations. Again, the Rules of Professional Conduct for the North Carolina Bar highlight the misleading nature of LHDR's representations.

14

and deceptive practices.

71. Pursuant to section 75-16.1, the Plaintiff and others similarly situated are entitled to

recover their reasonable attorney's fee as a part of court costs in this matter.

WHEREFORE, the Plaintiff, for himself and others similarly situated, respectfully demands judgment against LHDR for treble damages suffered by the Plaintiff and others similarly situated, an award of costs including attorney's fees, and such other relief as is just and proper.

## COUNT IV: UNFAIR AND DECEPTIVE TRADE PRACTICES (MACEY, et al)

72. Plaintiff adopts by reference Paragraphs 1 through 71 above as if fully set forth herein.

73. Defendant MACEY ET AL used LHDR as a mere instrumentality in its debt adjusting

business with the Plaintiff and others similarly situated such that all the acts and

representations of LHDR as set forth in Paragraphs 20 through 68 above were the acts of

MACEY ET AL.

74. Defendant MACEY ET AL for itself contracted with the Plaintiff and others similarly

situated to perform illegal debt adjusting activities and to commit the unauthorized practice of

law.

75. LHDR is a misleading trade name which should not be permitted to be used by MACEY

ET AL in North Carolina.

76. The Plaintiff and others similarly situated from and after June 9, 2007 have been

damaged by the Defendant MACEY ET AL's unfair and deceptive trade practices.

WHEREFORE, the Plaintiff for himself and others similarly situated respectfully demands a judgment against MACEY ET AL for treble damages, attorney's fees, costs and such other relief as is just and proper.

15

## COUNT V: UNFAIR AND DECEPTIVE TRADE PRACTICES (CDS)

77. Plaintiff adopts by reference Paragraphs 1, 2, 4, 6, 11-19, 28, 30-34, 36, 37, 48, 49, 52, 56, 58, 59, 61-65, from above as if fully set forth herein.

78. This is an action under section 75-16, N.C. Gen. Stat. related to illegal debt adjusting activities performed by CDS in North Carolina from June 9, 2007 to the present.

79. CDS is a debt adjuster as such term is defined in section 14-423, N.C. Gen. Stat., namely that it it holds itself out as acting for consideration as an intermediary between a debtor and the debtor's creditors for the purpose of reducing, settling or altering the terms of payment of any debt of the debtor.

80. CDS charged and accepted a fee from the Plaintiff before the debt settlement was completed or in advance of all the services agreed to having been rendered in full.

81. On and after June 9, 2007, CDS provided or endeavored to provide illegal debt adjusting services to the Plaintiff and others similarly situated in North Carolina in violation of section 14-424, N.C. Gen. Stat.

82. Pursuant to section 75-16, N.C. Gen. Stat., the Plaintiff is entitled to recover three times the actual damages suffered resulting from CDS' unfair and deceptive practices.

83. Pursuant to section 75-16.1, the Plaintiff is entitled to recover their reasonable attorney's fee as a part of court costs in this matter.

84. CDS' illegal debt adjusting activities are *per se* unfair and/or deceptive acts or practices affecting commerce under section 75.1-1, N.C. Gen. Stat. because they are illegal and unconscionable in North Carolina, and because CDS was unfairly and deceptively contracted through a legal services contract with was illegal, unconscionable and

16

illusory.

85. The Plaintiff has been damaged by the unfair and/or deceptive acts of CDS.

WHEREFORE, the Plaintiff, for himself and others similarly situated, respectfully demands judgment against CDS for three times the amount of damages suffered by the Plaintiff, an award of costs including attorney's fees, and such other relief as is just and proper.

## COUNT VI: UNJUST ENRICHMENT (CDS)

86. Plaintiff adopts by reference Paragraphs 77 through 85 above as if fully set forth herein.

87. CDS received proceeds from the Plaintiff which were the result of illegal debt adjusting activities from June 9, 2007 to the present.

88. CDS solicited and induced the proceeds from the Plaintiff and others similarly situated and has been unjustly enriched by the ill-gotten proceeds it has received from the Plaintiff.

89. Under the circumstances, it would be inequitable for CDS to be permitted to retain the funds and benefits conferred upon it by and through the Plaintiff and others similarly situated, and CDS has an equitable obligation to account to the Plaintiff and others similarly situated for the benefits received.

WHEREFORE, the Plaintiff, for himself and others similarly situated, respectfully demands judgment against CDS for the amount by which CDS has been unjustly enriched, costs, and such other relief as is just and proper.

## COUNT VII: UNJUST ENRICHMENT (LHDR, MACEY ET AL and HYSLIP)

90. Plaintiff adopts by reference Paragraphs 1 through 69 and 73 through 75 above as if fully set forth herein.

91. From June 9, 2008 to present LHDR, MACEY ET AL and HYSLIP received proceeds from the Plaintiff and others similarly situated which were the result of illegal debt

17

adjusting activities and the unauthorized practice of law.

92. The amounts received by LHDR, MACEY ET AL and HYSLIP are excessive relative to the work performed by LHDR, MACEY ET AL and HYSLIP.

93. LHDR, MACEY ET AL and HYSLIP solicited and induced the proceeds from the Plaintiff and others similarly situated and have been unjustly enriched by the proceeds it has received from the Plaintiff.

94. Under the circumstances, it would be inequitable for LHDR, MACEY ET AL and HYSLIP to be permitted to retain the funds and benefits conferred upon them by and through the Plaintiff and others similarly situated, and they have an equitable obligation to account to the Plaintiff and others similarly situated for the benefits received.

WHEREFORE, the Plaintiff, for himself and others similarly situated, respectfully demands judgment against LHDR, MACEY ET AL and HYSLIP, jointly and severally, for the amount by which they have been unjustly enriched, costs, and such other relief as is just and proper.

## COUNT VIII: LEGAL MALPRACTICE (HYSLIP, MACEY ET AL and LHDR)

95. The Plaintiff adopts by reference Paragraph 1 through 69, and 73 through 75 above as if fully set forth herein.

96. On or about June 1, 2010, HYSLIP endeavored to represent the Plaintiff as his attorney.

97. At all times during the representation of the Plaintiff, HYSLIP was not licensed to practice in the state of North Carolina and LHDR was not authorized to practice law as a professional limited liability company in North Carolina.

98. HYSLIP is a manager and member of LHDR and acted in such capacity and personally in representing the Plaintiff.

18

99. HYSLIP is a partner of the law firm of MACEY ET AL and through LHDR as an instrumentality, acted in such capacity in representing the Plaintiff.

100. HYSLIP as the Plaintiff's attorney had the duty to give the Plaintiff legal advice with regard to the Capitol One debt which legal advice would rise to the degree of knowledge and skill ordinarily possessed by others similarly situated in North Carolina.

101. On or about June 1, 2010, HYSLIP offered and accepted the Contract from the Plaintiff which contained an agreement to pay CDS and LHDR, both debt adjusters, advance fees for debt adjusting services, and which provided for legal services to be provided by individuals and entities not licensed to practice law in North Carolina.

102. The debt adjusting services under the Contract were illegal and unconscionable.

103. HYSLIP breached his duty to the Plaintiff by offering and accepting the Contract from the Plaintiff.

104. HYSLIP breached his duty to Plaintiff by not depositing client funds into a fiduciary account or general trust account of LHDR, which account is maintained at a bank in North Carolina or a bank with branch offices in North Carolina as required by Rule 1.15-2, Revised Rules of Professional Conduct of the North Carolina State Bar.

105. HYSLIP had a fiduciary duty to inform the Plaintiff of the risks of entering into the Contract which he did not do and thereby breached his duty to the Plaintiff.

106. HYSLIP had special knowledge regarding the actual outcomes of debt settlement contracts, and with a reckless and wanton disregard for the Plaintiff's rights, did willfully withhold such information from the Plaintiff in order to create unjustified expectations in the Plaintiff and to induce the Plaintiff to enter into the Contract and make payments

19

to LHDR.

107. HYSLIP by not complying with N.C. Gen. Stat. and the North Carolina Bar's rules regarding his, MACEY ET AL's and LHDR's practicing law in North Carolina did evidence a reckless and wanton disregard for the rights of the Plaintiff and others similarly situated as a client protected by the North Carolina Bar and the laws of North Carolina.

108. The Plaintiff has been damaged by HYSLIP's breaches and by their reckless and wanton disregard for the Plaintiff's rights.

109. HYSLIP, MACEY ET AL and LHDR committed acts related to others similarly situated to the Plaintiff from and after June 9, 2007 which were in effect and scope substantially similar to the acts committed relating to the Plaintiff as set forth above.

110. The tortious breaches of LHDR, MACEY ET AL and HYSLIP were gross and willful and evidence a reckless disregard for the Plaintiff's rights under the laws of North Carolina.

WHEREFORE, the Plaintiff respectfully requests, for himself and others similarly situated, a judgment against Defendant HYSLIP, MACEY ET AL and LHDR, jointly and severally, for damages, punitive damages, costs and such other relief as is just and proper.

## COUNT IX: NEGLIGENCE (CAROL)

111. The Plaintiff adopts by reference Paragraph 1 through 69 above as if fully set forth herein.

112. From and after May 4, 2011, Defendant Linda Carol is the qualifying officer of LHDR pursuant to 55B-16(a)(2) and is an attorney licensed to practice law in North Carolina.

20

113. Defendant Linda Carol as the North Carolina qualifying attorney of LHDR, a foreign professional limited liability company, had the duty to ensure that LHDR's debt adjusting activities in the state complied with applicable law and did not cause harm to the clients of LHDR in North Carolina.

114. Defendant Linda Carol did not actively participate in the legal representation of the Plaintiff, or others similarly situated.

115. Defendant Linda Carol knew or should have known that she was serving as a mere conduit attorney to qualify LHDR to practice law in North Carolina in order to offer to the Plaintiff the Contract which contained an agreement to pay CDS and LHDR, both debt adjusters, an advance fee for debt adjusting services.

116. Defendant Linda Carol knew or should have known that no person other than a North Carolina licensed attorney could provide legal services to LHDR clients in North Carolina from June 9, 2007 to May 4, 2011. *See* sections 84-4 and 55B-16(a)(3), N.C. Gen. Stat.

117. CDS' and LHDR's services under the Contract were illegal and unconscionable.

118. Defendant Carol breached her duty of care as the qualifying officer of LHDR, and her conduct and/or failure to act did not rise to the level of the degree of knowledge and skill ordinarily possessed by others similarly situated in North Carolina.

119. Defendant Linda Carol also breached her duty to Plaintiff by not depositing client funds into a fiduciary account or general trust account of LHDR, which account is maintained at a bank in North Carolina or a bank with branch offices in North Carolina as required by Rule 1.15-2, Rules of Professional Conduct of the North Carolina State

21

Bar.

120. Defendant Linda Carol breached her duty to the Plaintiff by facilitating and permitting the Plaintiff to enter into and continue performing an illegal and unconscionable Contract with LHDR.

121. Defendant Linda Carol committed acts related to others similarly situated to the Plaintiff which acts were in effect and scope substantially similar to the acts committed relating to the Plaintiff as set forth in paragraphs 114 through 120 above.

122. The Plaintiff and others similarly situated have been damaged as a result of Defendant Linda Carol's breach of her duty of care.

WHEREFORE, the Plaintiff respectfully requests, for himself and others similarly situated, a judgment against Defendant Linda Carol for damages, costs and such other relief as is just and proper.

## COUNT X: CONSUMER FRAUD (LHDR, MACEY ET AL. and HYSLIP)

123. Plaintiff adopts by reference Paragraphs 1 through 69 and 73 through 75 above as if fully set forth herein.

124. From and after a date three years prior to the date of commencement of this action, LHDR and HYSLIP represented to the Plaintiff and others similarly situated that legal services would be provided to them by a licensed lawyer in compliance with North Carolina law.

125. The Plaintiff and others similarly situated did not receive legal services from a lawyer licensed in North Carolina as represented, and received services which were illegal in North Carolina.

126. LHDR and HYSLIP knew, or proceeded with a reckless disregard for the truth, that at

22

the time of their representations that legal services would not be provided to the Plaintiff or others similarly situated by a lawyer licensed to practice in the state of North Carolina, and that the services under the Contract and contracts were illegal.

127. LHDR and HYSLIP knew, or proceeded with a reckless disregard for the truth, at the time of their representations that LHDR and HYSLIP were not qualified under applicable law to perform legal services to consumers in North Carolina.

128. The services provided by LHDR and HYSLIP to the Plaintiff and others similarly situated were not legal services, but rather illegal.

129. The actions and representations of LHDR and HYSLIP were fraudulent, willful, wanton and recklessly indifferent to the rights of the Plaintiff and others similarly situated as residents of the state of North Carolina.

130. The Plaintiff and others similarly situated relied upon the false representations and actions of LHDR and HYSLIP, and thus were induced to enter into illegal debt settlement contracts.

131. The Plaintiff and others similarly situated were damaged by the fraudulent actions and representations of LHDR and HYSLIP.

WHEREFORE, the Plaintiff for himself and others similarly situated respectfully request judgment against LHDR, HYSLIP, and MACEY ET AL, jointly and severally, for damages, punitive damages, costs and such other relief as is just and proper.

<u>DEMAND FOR JURY TRIAL</u>

Plaintiff requests a jury trial as to all issues so triable.

23

Signed and filed with the Clerk of Superior Court this 9 day of June, 2011 in Macon County, North Carolina.

Stuart Sloan, Attorney for Plaintiffs
53 E. Main Street, Suite B
Franklin, NC 28734

24

Exhibit A

# ATTORNEY RETAINER AGREEMENT

**I. Parties and Purposes:** This Agreement for legal services is entered into on the date shown below between Legal Helpers Debt Resolution, LLC, also known as the law firm of Macey, Aleman, Hyslip & Searns (hereinafter referred to as LHDR) and ROBERT STEWART _____ (hereinafter referred to as Client) relating to advice, counseling, analysis and negotiation services in regard to Client's unsecured debt and related financial circumstances regarding credit cards and line of credit obligations (unsecured debt). This contract is solely between LHDR, any assigns, or related entities that may be formed in the future and not any individual, partner, member, or employee of LHDR. LHDR is a debt relief agency and law firm that provides debt resolution services to its clients.

**II. Condition of Effectiveness:** This Agreement does not take effect, and LHDR has no obligation to provide any services, until both the Client and Client have executed a copy of this Agreement, delivered such copy to the other party, and the Client makes an initial flat fee retainer payment as provided for in Paragraph VIII.

**III. Limited Retention:** LHDR will review Client's current unsecured debt burden and thereafter negotiate and attempt to enter into settlements with creditors of the Client in an effort to modify and/or restructure Client's current unsecured debt. LHDR and its staff will timely respond to all Client inquiries and keep the Client informed as to all offers of debt modification. LHDR's obligation to negotiate shall only apply to specific unsecured debt obligations as disclosed by the Client. The details of such obligation are included in the Creditor Listing Form of this Agreement.

LHDR will not and does not provide the following services to Client:
- Tax, financial planning or accounting advice;
- Attempt to repair credit or correct entries on credit reports;
- Bankruptcy services, except as specifically provided for below;
- Represent Client in any matter before a court, including foreclosure proceedings or in any arbitration or hearing; or
- Eliminate harassment or collection calls from creditors or collectors.

In the event a creditor or collector sues Client, whether related to a debt obligation or any other claim, LHDR is under no obligation to provide representation. LHDR will discuss specific debt related issues with Client and, if appropriate, offer additional legal services in regard to bankruptcy or other debt resolution services for Client's consideration.

**IV. Term:** The term of this Agreement shall commence on the effective date and continue until the negotiated resolution of unsecured debt disclosed by Client in the Creditor Listing Form of this Agreement or until termination of this Agreement as provided in Paragraph XIV.

**V. Subcontracting Specific Tasks:** LHDR shall subcontract certain tasks including negotiations with creditors and collectors and certain customer support responsibilities to a third party. LHDR and other legally trained, licensed personnel will supervise all negotiations and customer support and ensure that these services comply with established procedures.

**VI. Client Obligations:**

The Client will perform the following obligations:
- Provide LHDR with all information and documents in regard to the unsecured debt it seeks to modify. Such information provided must contain the current account balance and the name of the creditor and account number;
- As an ongoing obligation, Client will provide all information related to the unsecured debt as requested by LHDR. All information provided by Client must be truthful and accurate. LHDR is under no obligation to verify information supplied by Client. Client will forward all correspondence from creditors and collection agencies, including collection letters, demands and complaints within five (5) days to LHDR. If a creditor or collection agency telephones client, Client will not engage in debt resolution discussions. If a creditor or collection agency engages in harassing or abusive conduct, the Client will promptly notify LHDR and provide complete and accurate information regarding such contacts;
- Client will timely respond to all requests, communications or documentation from LHDR or its representatives and will promptly provide LHDR with any change of address or other contact information;
- Subsequent to the execution of this Agreement, Client shall, based on the advice of LHDR, determine and agree to a schedule of monthly payments based on the total amount of debt to be modified, including payment of appropriate fees and costs to LHDR (hereinafter referred to as Payment Confirmation Schedule), a copy of said schedule is attached hereto, incorporated by this reference. Client agrees to make all the payments on the designated dates; and
- Client agrees to timely and fully pay all debt modification negotiated by LHDR and approved by Client.

ARA-IP 9-23-09

**VII. Law Firm's Obligations:** In consideration for Client's obligations as stated in Section VI, LHDR agrees to use its best efforts to obtain a satisfactory result for Client by providing basic legal services in connection with the debt review and modification for Client on an efficient and cost-effective basis. Client expressly agrees that LHDR makes no specific guarantee regarding the outcome of the case, including but not limited to, successful modification or discharge of debt, and/or whether or not LHDR can successfully reduce the balance of all unsecured debts. LHDR offers its advice based on the information as disclosed by Client and Client agrees that LHDR is not responsible and assumes no liability for changes in the law, changes in Client's financial situation, and/or facts as revealed after review of documentation that could effect in any way any advice LHDR gives Client. LHDR will adhere to the specific disclosures regarding contingency fees and the minimum performance standards as outlined in the Payment Confirmation Schedule.

**VIII. Fees and Costs:** In consideration for all services to be rendered, Client agrees to pay LHDR an initial flat fee retainer of five hundred dollars ($500) for debt review, analysis and structuring of a debt resolution plan. The fee retainer may be paid over three months with the first payment of 166.67 due at the time of execution of the agreement with the second payment of $166.67 due after 30 days of the execution date and the final payment of $166.67 due at 60 days after execution of the agreement. In addition, Client shall pay the law firm a monthly maintenance fee/cost for their debt resolution plan in the amount of $50 commencing in the first month of their debt resolution plan.

If LHDR is able to obtain a sixty-five percent (65%) or greater reduction of Client's total scheduled debt of the original balance on the accounts listed in the Creditor Listing Form, Client agrees to pay LHDR on a contingency fee basis five percent (5%) of the amount of debt reduction (total amount enrolled in the program less amount of settlement) accomplished by the work of LHDR and its staff, which will be reconciled at the end of the program. The initial $500 flat fee retainer and other administrative legal fees paid by Client shall be fully credited as a partial payment towards the client's obligation for the 5% contingency fee. Client agrees to have their initial flat fee retainer of $500 automatically drafted by LHDR (or its designees) based on an agreed payment schedule from an authorized Federal Deposit Insurance Corporation (referred to as "F.D.I.C.") insured bank account on ___06/15/2010___ (Month/Day/Year).

The implementation, management and maintenance of a debt resolution plan by LHDR shall be performed under the direct supervision of LHDR by CDS Client Services (CDSCS) at a cost of fifteen percent (15%) of the Client's total scheduled debt (hereinafter referred to as Service Cost). LHDR has a non-exclusive reciprocal referral Agreement with CDSCS to provide these services under LHDR's direct supervision. These are services required for the debt resolution plan, but are not legal services. There is no attorney-client relationship between Client and CDSCS in regard to these services and any specific communications between client and CDSCS are not protected by attorney-client privilege. CDSCS cannot and will not provide any legal advice to the Client other than as communicated through CDSCS by LHDR and under LHDR's supervision. The 15% Service Cost shall be paid by Client. The first three (3) program payments are applied to both service and attorney service costs. Within these first three months, depending on program term and estimated savings percentage, any payment overage would be applied to the Client's settlement savings. The initial payment is equal to three and three quarter percent (3.75%) of the Client's total debt accepted into the program. The remaining balance of the service cost is equivalent to eleven and one quarter percent (11.25%) of the Client's total debt accepted into the program. The balance of costs shall be paid by Client in equal consecutive monthly payments beginning on month four (4) and continuing through to completion of Client's fee schedule. Monthly payments in excess of costs will have the overage directly allocated towards Client's settlement saving fund (see payment schedule for specific plan details).

Client agrees to have their payments of Service Cost and Savings to be automatically drafted by LHDR (or its designees) from an authorized F.D.I.C. bank account with Client's first payment to start on ___06/15/2010___ (Month/Day/Year) and thereafter each month on the: ☐ 5th ☐ 10th ☑ 15th ☐ 20th ☐ 25th.

~~IX. Electronic Payment Authorizations: By signing this Agreement, Client authorizes LHDR (or its designees) to deduct all~~ legal fees and Service Cost via electronic payment authorizations from an authorized checking, savings, or other F.D.I.C. insured bank account. LHDR requires a minimum of five (5) business days to change any scheduled Electronic Funds Transfer ("EFT") from an authorized bank account. It is also understood that Client shall not make or request changes of his or her payment schedule during the first ninety (90) days after execution of this Agreement. If any payment change occurs within the first ninety (90) days of execution of this Agreement, Client will be charged an additional cost of twenty-five dollars ($25). It is also understood that Client shall not make or request more than two (2) changes of his or her payment schedule within a twelve (12) month period after the first ninety (90) days of execution of this Agreement without termination from the program. Non-sufficient funds "NSF" in Client's authorized bank account, on Client's scheduled payment date, is considered a non-payment and there will be a twenty-five dollar ($25) cost automatically charged to Client's account for any NSF transactions.

ARA-IP 9-23-09

Case 2:11-cv-00026-MR-DLH   Document 1-1   Filed 07/11/11   Page 28 of 47

## X. Client Acknowledgement:

Client acknowledges and agrees that:
- The outcome of LHDR's negotiation of any specified account entered by Client into the debt negotiation program is uncertain and results may vary;
- The service provided by LHDR does not include the modification, collection or improvement of Client's credit reports or credit score;
- LHDR's debt negotiation may not prevent creditor or collection agency harassment, nor prevent phone calls on behalf of creditors or collection agencies to Client;
- Client may be sued by creditors or collection agencies and in that event LHDR's services pursuant to this Agreement does not include legal representation on those matters;
- The discharge of indebtedness may be considered a taxable event and Client should consult a tax professional for any such service;
- Client will continue to incur late fees and penalties on the accounts during the program; and
- Client's participation in the program may adversely affect the clients' credit score.

**XI. Additional Debt:** Client should not incur any new or additional debt and should refrain from using or obtaining credit during the LHDR debt resolution representation. Client understands all credit cards and/or lines of credit shall be closed and that no additional credit cards and/or lines of credit should be applied for during the LHDR debt resolution representation. Client understands that they may keep one credit card, not to be accepted in the program, open for emergency purposes only. This credit card should not be from the same issuing bank as any accounts entered by Client into the LHDR debt resolution representation.

**XII. Debt Resolution Minimum Standards of Representation:** LHDR maintains a standard of representation for each individual account entered by Client into the LHDR debt resolution plan, of a minimum of settlement debt reduction of thirty-five percent (35%) of the debt's face value at the time of settlement, including interest, penalties and late fees. In the event that LHDR does not meet this minimum standard for a particular account, it shall refund the pro rata share of the 15% Service Cost paid to CDSCS for such work under the direct supervision of LHDR and LHDR shall further direct CDSCS to settle the individual account for Client at no additional cost. This refund is subject to all of the following terms and conditions:

- Client must act in complete compliance with this Agreement and shall cooperate with LHDR under this Agreement;
- Client must not default on any Service Cost payment obligations under an agreed-upon settlement for any accepted account;
- If for any reason, Client is unwilling or is unable to accept a proposed settlement on any contracted account with a settlement debt reduction of thirty-five percent (35%) of the debt's face value at the time of settlement minus fees and costs of this Agreement, or Client otherwise fails or refuses to accept any such settlement on any contracted account with a settlement debt reduction of thirty-five percent (35%) of the debt's current face value at the time of settlement, minus fees and costs of this Agreement this minimum standard provision shall be null and void, and have no force or effect;
- Should LHDR be unable to settle one or more of Client's individual accounts accepted pursuant to this Agreement, any refund shall be calculated on a pro rata basis as to the Service Cost paid to LHDR attributable to such individual unsettled account;
- This minimum standard provision does not apply to any Client's individual accounts accepted into the debt resolution plan which have had balance transfers, cash advances, accounts initially accepted with balances fewer than one thousand dollars ($1,000)or where there has been a law suit already filed on such individual account. LHDR will discuss with the Client other legal remedies in the event of such circumstances including Chapter 7 or Chapter 13 bankruptcy;
- Client must have completed the program and not terminated the Agreement prior to LHDR having an opportunity to settle all accounts on the Creditor Listing Form; and
- Any accounts subject to garnishment are excluded from the minimum standard representation.

**XIII. Impact on Credit Rating:** Client acknowledges that nonpayment, minimal payments, or settlement payments to creditors may result in derogatory credit information transmitted to the major credit reporting agencies, and in the event that any negative effect is caused to Client's credit profile, Client does not provide credit repair services and Client acknowledges herein that it received proper notice regarding possible consequences to the Client's credit rating.

**XIV. Termination and Severability:** Client agrees that both parties may sever the relationship at any time. The party choosing to terminate the Agreement will document the decision by sending a 30-day written notice to the other party. The termination will occur upon receipt of such notice. If such termination occurs, the Client shall only be responsible for the fees and costs incurred through the date of cancellation and the initial flat fee retainer. LHDR may cancel this Agreement if the Client fails to make two (2) successive monthly payments. If any legal action is brought regarding this Agreement, the prevailing party shall be entitled to legal fees and court costs.

ARA-IP 9-23-09

Case 2:11-cv-00026-MR-DLH   Document 1-1   Filed 07/11/11   Page 29 of 47

## XV. Authorizations:

The Client authorizes LHDR as follows:

- The Client authorizes LHDR to disclose information regarding Client's financial condition or status to any creditor or collector in regard to the debt resolution plan. Further, LHDR may obtain information concerning Client from such creditors;
- Client authorizes LHDR to disclose to creditors and collectors that LHDR and its representatives, or subcontractors, are authorized to negotiate debt resolution terms on behalf of Client; and
- Client authorizes LHDR to negotiate and modify the unsecured debt listed in the Creditor Listing Form of this Agreement.

## XVI. Confidentiality: LHDR agrees that any information provided by Client will be kept confidential and only be used in providing the negotiation and modification services described in this Agreement.

## XVII. Disclosures and Disclaimers: Client acknowledges and understands that LHDR will not agree to provide the services under this Agreement absent Client's full understanding and acceptance of the basis for the work to be performed. LHDR and its agents and representatives provide services related to the modification and restructure of the Client's unsecured debt. LHDR cannot and does not make any guarantee of any kind regarding the success of any negotiation in regard to such modification. Client acknowledges that each case is unique and that results may vary. Client understands that there are other remedies available in regard to their goal of debt resolution including consumer credit counseling and bankruptcy. (See Exhibit A of this Agreement for further information). Consumer Credit Counseling may impact less on the Client's credit rating and reduce interest rates on current debt, but generally will require payment of the majority of the Client's existing debt. Bankruptcy may discharge the majority of Client's debts; however Client has requested LHDR to pursue other alternatives at this time to avoid bankruptcy. LHDR will discuss and advise Client as to the bankruptcy option, including fees and costs, at any time that Client's circumstances change or Client requests such consultation. There are no additional fees or costs required from Client for such consultation and advice regarding bankruptcy. In the event that the Client elects to pursue a bankruptcy option in the future with LHDR, a full disclosure regarding fees shall be given including any credits or pro rata reduction in fees based on LHDR's representation of the Client pursuant to this Agreement.

## XVIII. Arbitration: In the event of any claim or dispute between Client and LHDR related to the Agreement or related to any performance of any services related to this Agreement, such claim or dispute shall be submitted to binding arbitration upon the request of either party upon the service of that request. The parties shall initially agree on a single arbitrator to resolve the dispute. The matter may be arbitrated either by the Judicial Arbitration Mediation Service or American Arbitration Association, as mutually agreed upon by the parties or selected by the party filing the claim. The arbitration shall be conducted in either the county in which Client resides, or the closest metropolitan county. Any decision of the arbitrator shall be final and may be entered into any judgment in any court of competent jurisdiction. The conduct of the arbitration shall be subject to the then current rules of the arbitration service. The costs of arbitration, excluding legal fees, will be split equally or be born by the losing party, as determined by the arbitrator. The parties shall bear their own legal fees.

## XIX. Integration: This Agreement and all schedules are the complete and exclusive statement of the Agreement of the parties and supersede any proposal, prior Agreement, oral or written, and any other communication related to this matter.

## XX. Enforceability: In the event that any portion of this Agreement is determined to be illegal or unenforceable, the determination will not affect the validity or enforceability of the remaining provisions of this Agreement, all of which shall remain in full force and effect. The parties agree to insert another provision that will be valid to come in closest to the original intent of the Agreement.

## XXI. Amendments: This Agreement may be modified by a subsequent Agreement by the parties only by an instrument in writing, signed by both LHDR and Client and no waiver of any provision or condition of this Agreement shall be effective or binding unless such waiver be in writing and signed by the party claiming to have given such waiver.

Witness our hands and seals this ___ day of _____ 20 10

_____
Signature of Client

_____
Signature of LHDR

_____
Signature of Co-Client

ARA-IP 9-20-09

Page 4 of 6

**Exhibit A**
**Disclosure and Election of Services**

LHDR is a full service debt resolution law firm including debt negotiation and restructuring, bankruptcy services and where appropriate referral to consumer credit counseling agencies. The following provides information as to all these approaches to debt resolution for your review. Clients should fully understand the advantages and disadvantages of each to make an informed decision.

Credit Counseling offers services that will allow you to work with a certified credit counselor to devise a plan that is tailored to your specific needs and goals. Credit counseling agencies often provide services for free and will help to educate you about how to avoid financial problems in the future by offering debt management classes or seminars. They do not erase your debt. Instead they work with you to budget money so that you can pay off the debt often times by debt consolidation. Collections by your creditors may continue while using a credit counselor and most plans require you to pay your entire debt balance over the life of the plan.  Consumer credit counseling agencies are required to advise you that they are compensated by the creditors based on the amount of debt they are able to have you pay.

Bankruptcy will usually discharge your unsecured debt and your creditors are not permitted to contact you once you have filed with the court. There are two kinds of bankruptcy; Chapter 13 bankruptcy where you are generally able to keep property that is mortgaged such as your house or car and are expected to repay debts in three to five years and Chapter 7 bankruptcy where you must give up all non-exempt property and assets that you own in exchange for a discharge of most debt. Bankruptcy may be appropriate if you have pending foreclosures, collection litigation or wage garnishments, however, you will generally be unable to establish credit for up to ten years.  In 2005, the bankruptcy law was changed to make it more difficult for some consumers to file Chapter 7 bankruptcy based on a financial means test and credit counseling requirements that may require a repayment of some of your debt.

Debt Negotiation is a process where the law firm, based on your specific circumstances, develops a plan to manage your debt resolution with your creditors. In general terms, it is a process of negotiating with your creditors for a lower balance/forgiveness of debt, a reduced interest rate, a reduced monthly payment or other restructuring alternatives. To be successful in debt negotiation, you need to have sufficient cash flow to meet your living expenses each month and provide some funds towards resolution of your debt. LHDR will contact all your unsecured creditors in writing to inform them that you are represented by the law firm and that we are advising you as to all alternatives for debt resolution. As you have indicated in your compliance review, you prefer LHDR to attempt debt negotiation as an alternative to bankruptcy.  However, if your financial circumstances change, we will advise you as to other debt resolution alternatives outlined above, so you can make an informed decision based on our advice.

If you have any questions regarding the above options, please contact us for further explanation. If you are ready to proceed, sign below your acknowledgement that you have reviewed all possible debt resolution options and have determined that debt negotiation by LHDR is your preference, subject to your ability to request a different alternative if your circumstances change in the future. Please review Section XVII of this Agreement prior to executing your informed consent below.

*I have reviewed all debt resolution options available to me including bankruptcy and consumer credit counseling and elect to pursue debt negotiation services with LHDR, subject to my ability to request other alternatives, based on changes in my financial circumstances.*

X _____  ✓ 6-1-10
Signature of Client                          Date

_____  _____
Signature of Co-Client                       Date

Page 5 of 6

ARA.IP9.01-09

**THIS PORTION FOR ELECTRONIC PAYMENT AUTHORIZATION**

By signing below, I authorize Legal Helpers Debt Resolution, LLC (LHDR) (or their designees) to process debit entries from my checking, savings, or other F.D.I.C. insured bank account. This authority shall remain effective until cancelled by me in writing, at least five (5) business days prior to my scheduled payment due date. I understand there will be a twenty-five dollar ($25) cost automatically charged to my account for any non-sufficient funds (NSF) transactions. I will provide LHDR with a voided check or savings deposit slip.

Name on Account (Please Print):

ROBERT STEWART

Please transfer payments directly from my ☑ Checking account, ☐ Savings account, or ☐ Other account.

Bank Name: MACON BANK

Bank Address: 30 HYATT RD

City: FRANKLIN _____ St: NC Zip: 28734

Bank Phone #: 828 · 524 · 1000

**Routing # 253170486 _____ Account # 0300012934

*Routing numbers are always 9 digits long and always start with 0, 1, 2, or 3.

_____        ROBERT STEWART        6-1-10
Authorized Signature on Account      Printed Name           Date

Attach Voided Check or Savings Deposit Slip Here



DIRT PLUS, INC.                                           3337
PH. (828)524-4042
54 JACOBS MTN. RD.
FRANKLIN, NC 28734

PAY
TO THE
ORDER OF_____ VOID _____ $_____

_____ DOLLARS

MACON
BANK

FOR_____

⑈003337⑈ ⑆253170486⑆ 0300012934⑈ 051

Page 6 of 6

ARA-IP 9-23-09

Exhibit B

## SUBMISSION CHECKLIST

ALL INFORMATION MUST BE TYPED AND LEGIBLE.

*Handwritten:* ERIC CHUNG

ARMORED
FINANCIAL SERVICES

O **Page 1 – Legal Helpers Cover Page**

O **Page 2 – Client Information Form:** All Information Complete and Legible?

O **Page 3 – Hardship and Budget Analysis:** Complete and Balanced Budget?

O **Page 4 – Creditor Listing Form:**
  - o   Correct and Complete Account Numbers Provided?

O **EVIDENCE OF THE DEBT:** Stacked in order as listed on Creditor Listing Form?
  - o   Closing dates of statements within 60 days of first payment?
  - o   All individuals shown on statements are also parties to the agreement?
  - o   Balances on statements match those listed on the Creditor Listing Form?

O **Page 5 – Attorney Retainer Agreement:** All Parties Included?

O **Page 6 – Attorney Retainer Agreement Continued:** Payment Dates Indicated?

O **Page 7 – Attorney Retainer Agreement Continued:** Included?

O **Page 8 – Attorney Retainer Agreement Continued:** Dated/Executed and Signed by All Parties?

O **Page 9 – Exhibit A – Disclosure and Election of Services:** Dated and Signed by All Parties?

O **Page 10 – Electronic Payment Authorization:**
  - o   Client's Name
  - o   Checking or Savings Account Identified
  - o   Bank Name
  - o   Bank Address
  - o   Bank Routing Number
  - o   Bank Account Number
  - o   Authorized Signature on Account and Date
  - o   Evidence of Account
    - ▪   Voided or Cancelled Check
    - ▪   Deposit Slip
    - ▪   Counter Check
    - ▪   Bank Statement
    - ▪   On-Line Statement
    - ▪   Letter from Bank

O **Page 11 – Power of Attorney:** Completed, Dated/Executed and Signed?

O **Page 12 – 14 – Special Purpose Account Application: Global Client Solutions –** Typed and Legible
  - o   Basic Client Information Completed?
  - o   Financial Institution Information Completed?
  - o   "As It Appears on Check" Information Completed?
  - o   Signed and Dated

O **Credit Analysis:** Completed and Signed – Is a Tangible Net Benefit Demonstrated?

O **Fee Schedule:** Signed and Matching the Correct Priced Program?

O **Any Addendums if Applicable**

O **Any Additional Documentation if Applicable**

**Exhibit C**

SOSID: 1147800
Date Filed: 5/4/2011 9:41:00 AM
Elaine F. Marshall
North Carolina Secretary of State
C201108400023

**State of North Carolina**
**Department of the Secretary of State**

## APPLICATION FOR AMENDED CERTIFICATE OF AUTHORITY
### (PROFESSIONAL LIMITED LIABILITY COMPANY)

Pursuant to § 57C-7-05 and Chapter 55B of the General Statutes of North Carolina, the undersigned limited liability company hereby applies for an Amended Certificate of Authority to transact business in the State of North Carolina, and for that purpose submits the following statement.

1.　The name of the limited liability company is: __Legal Helpers Debt Resolution, LLC__

2.　The name the limited liability company is using in the State of North Carolina is:

　　__Legal Helpers Debt Resolution,　LLC__

3.　The state or country of organization is: __Nevada__

4.　The date the limited liability company was authorized to transact business in the State of North Carolina is: __5/7/2010__

5.　The personal services to be rendered by the limited liability company are: __Consumer Legal Services__

6.　With respect to each professional service practiced or to be practiced through the limited liability company in this State, the name of at least one of the limited liability company's managers who is a licensee of the licensing board which regulates such profession in this State is: *(insert name here)*

7.　Attached are certifications by the appropriate licensing boards that each person set forth in Item 6 above is a "licensee" as defined in N.C.Gen. Stat. § 55B-2(2).

8.　This application is filed for the following reason *(complete all applicable items)*:

　　a.　The limited liability company has changed its corporate name to:_____

　　b.　The name the limited liability company will hereafter use in the State of North Carolina is changed to: __Legal Helpers Debt Resolution, PLLC__

　　c.　The limited liability company has changed its period of duration to:_____

　　d.　The limited liability company has changed the state or country of its organization to:

　　　　_____

　　e.　(Other) __Provide Legal Services__

Case 2:11-cv-00026-MR-DLH　Document 1-1　Filed 07/11/11　Page 36 of 47

9.     Attached is a certificate setting forth and attesting to the change, duly authenticated by the secretary of state or other official having custody of limited liability company records in the state or country of organization.

10.    If the limited liability company is required to use a fictitious name in order to transact business in this State, a copy of the resolution of its managers adopting the fictitious name is attached.

11.    This application will be effective upon filing, unless a date and/or time not later than 90 days after the date of filing is specified: _____

This the **8ᵀᴴ** day of **MARCH** , 20 **11**

*By executing this application on behalf of the applicant limited liability company, I certify under oath that the undersigned limited liability company is a "foreign professional limited liability company" within the scope of N.C.G.S. Sections 57C-2-01 and 55B-16(b).*

_LEGAL HELPERS DEBT RESOLUTION, LLC_
Name of Limited Liability Company

_____
Signature of Manager

_JEFFREY HYSLIP_  _MEMBER_
Type or Print Name and Title

_____            *(site of acknowledgment)*
_____

    This **8ᵀᴴ** day of **MARCH** , 20 **11** , personally came before me, _VIRGINIA URIOSTEGUI_
Notary Public, _JEFFREY HYSLIP_ , who, being by me duly sworn, says that he/she is
_member_ of _Legal Helpers Debt Resolution, LLC_ , a professional limited liability
company, and that this Application for Amended Certificate of Authority was signed by him/her on behalf of
the professional limited liability company by its authority duly given. And the said _____
acknowledged the said writing to be the act and deed of said professional limited liability company.
    Witness my hand and official seal, this the **8ᵀᴴ** day of **MARCH** , 20 **11**

(Official Seal) **OFFICIAL SEAL**
**VIRGINIA URIOSTEGUI**
**NOTARY PUBLIC - STATE OF ILLINOIS**
**MY COMMISSION EXPIRES:06/21/11**

_____
                                    Notary Public

My Commission Expires _6 / 21_ , 20 _11_

NOTES:
1.   Filing fee is $50. This application must be filed with the Secretary of State.
2.   Only a "foreign professional limited liability company" may use this application. To determine whether a particular limited liability company is such a "foreign professional limited liability company," it is necessary to examine the requirements of N.C.G.S. Sections 57C-2-01(e) and 55B-16(b). If the company does **not** meet those requirements, it must use the standard form for a limited liability company.

Case 2:11-cv-00026-MR-DLH   Document 1-1   Filed 07/11/11   Page 37 of 47

**Certification of Registration for Foreign Limited Liability Company
Applying To the North Carolina Secretary of State for a Certificate of Authority**

An appropriate representative of **Legal Helpers Debt Resolution, LLC**, a foreign limited liability company organized in **Nevada**, has certified to the Council of the North Carolina State Bar the names and addresses of all persons who will be managers, members, employees, and agents of the limited liability company who will provide legal services to persons in North Carolina and that the limited liability company shall be subject to the applicable rules and regulations and all disciplinary powers of the North Carolina State Bar.

Based upon that certification and my examination of the roll of attorneys licensed to practice law in the state of North Carolina, I hereby certify that **Linda Carol (ID #27531)** is duly licensed to practice law in the State of North Carolina, is an active member of the N.C. State Bar in good standing, and therefore is a "licensee" as defined in N.C. Gen. Stat. § 55B-2(2). I hereby issue this Certification of Registration pursuant to the Rules of the North Carolina State Bar, 27 N.C.A.C. 1E, Section .0200, and N.C. Gen. Stat. §55B-10 and §57C-2-01(c), provided, however, that the name of said limited liability company shall contain the word "Professional" or the abbreviations "P.L.L.C." or "PLLC" while transacting business in North Carolina.

This certification is executed under the authority of the Council of the North Carolina State Bar, this the 24th day of March, 2011.

L. Thomas Lunsford, II, Secretary
The North Carolina State Bar

# The North Carolina State Bar

## CERTIFICATE OF REGISTRATION

## Legal Helpers Debt Resolution, PLLC

It appears that this law firm has met all of the requirements for Registration as an Interstate Law Firm.

By authority of the Council of The North Carolina State bar, I hereby issue this Certificate of Registration pursuant to the North Carolina State Bar, 27 N.C.A.C 1E, Section .200.

This registration expires December 31, 2011.

Given over my hand and the Seal of the North Carolina State Bar, this

____24th____ day of ____March____ , ____2011____ .

_____

Secretary of the North Carolina State Bar

# Exhibit D

# LEGALHELPERS
## DEBT RESOLUTION, LLC

The National Law Firm of Macey, Aleman, Hyslip & Searns
P: (866) 539-9169 | F: (866) 945-9166 | www.legalhelpers.com

MAIN OFFICE
233 S Wacker Dr., Suite 5150
Chicago, IL 60606

ADMINISTRATIVE OFFICE
125 I DuPont, Suite #101
Irvine, CA 92612
Ph: (866) 539-9169
F: (866) 945-9166
casey@legalhelpers.com

## LETTER OF REPRESENTATION

July 1, 2010

CAPITAL ONE
PO BOX 79265
CITY OF IND, CA 91716-9265

Re: ROBERT STEWART                    Account # 4802137043648940

To Whom It May Concern:

Our law firm represents the above client(s) in regard to payment of the outstanding balance of the account
held by your institution.

We are reviewing our client's financial circumstances in order to determine all feasible legal remedies.
Although we are prepared to advise our client regarding the full range of appropriate debt resolution
options, they have asked us to work directly with your institution to consider any less severe alternatives at
this outset. Although it is our responsibility to provide our clients with full protection of their legal rights, it
is our intention to respect our client's initial instructions and work directly with your institution regarding
resolution of this account.

Please cease and desist all communication with the above client(s) and direct all contact to our Administra-
tive Offices at (866) 539-9169, or via mail at 2132 DuPont, Suite 101, Irvine, CA 92612 in regard to any
matter concerning this debt, so we can present this information to our client. Please also take careful notice
that the client(s) cannot receive any calls on a mobile phone, in the place of employment and/or a phone
intended for business use.

Sincerely yours,

Jeffrey S. Hyslip, Esq.
Managing Attorney
Admitted in Ohio

PAGE 04 OF 04

011056 / QA-  7826/DOM

**Exhibit E**

Home | About Ross | Calendar | News | FAQ | Forms | Contact Us

Search...

| Home | Information Center | Election Center | Business Center | Licensing Center | Securities Center | Online Services |

My Data Reports    Commercial Recordings    Licensing

# LEGAL HELPERS DEBT RESOLUTION, LLC

| New Search | Printer Friendly | Calculate List Fees |

## Business Entity Information

| | | | |
|---|---|---|---|
| Status: | Active | File Date: | 4/29/2009 |
| Type: | Domestic Limited-Liability Company | Entity Number: | E0242672009-4 |
| Qualifying State: | NV | List of Officers Due: | 4/30/2012 |
| Managed By: | Managers | Expiration Date: | |
| NV Business ID: | NV20091403880 | Business License Exp: | 4/30/2012 |

## Additional Information

| | |
|---|---|
| Central Index Key: | |

## Registered Agent Information

| | | | |
|---|---|---|---|
| Name: | DONALD NORRIS | Address 1: | 1701 W CHARLESTON BLVD STE 320 |
| Address 2: | | City: | LAS VEGAS |
| State: | NV | Zip Code: | 89102 |
| Phone: | | Fax: | |
| Mailing Address 1: | | Mailing Address 2: | |
| Mailing City: | | Mailing State: | NV |
| Mailing Zip Code: | | | |
| Agent Type: | Noncommercial Registered Agent | | |

View all business entities under this registered agent

## Financial Information

| | | | |
|---|---|---|---|
| No Par Share Count: | 0 | Capital Amount: | $ 0 |

No stock records found for this company

## Officers

☐ Include Inactive Officers

### Manager - JASON E SEARNS

| | | | |
|---|---|---|---|
| Address 1: | 303 EAST 17TH AVENUE | Address 2: | SUITE 340 |
| City: | DENVER | State: | CO |
| Zip Code: | 80203 | Country: | USA |
| Status: | Active | Email: | |

### Manager - THOMAS G MACEY

| | | | |
|---|---|---|---|
| Address 1: | 233 S. WACKER DERIVE | Address 2: | SUITE 5150 |
| City: | CHICAGO | State: | IL |

Case 2:11-cv-00026-MR-DLH   Document 1-1   Filed 07/11/11   Page 43 of 47

| Zip Code: | 60606 | Country: | USA |
|---|---|---|---|
| Status: | Active | Email: | |

**Manager - JEFFREY J ALEMAN**

| Address 1: | 233 SOUTH WACKER DRIVE | Address 2: | SUITE 5160 |
|---|---|---|---|
| City: | CHICAGO | State: | IL |
| Zip Code: | 60606 | Country: | USA |
| Status: | Active | Email: | |

**Actions\Amendments**

Click here to view 5 actions\amendments associated with this company

---

Information Center | Election Center | Business Center | Licensing Center | Securities Center | Online Services | Contact Us | Sitemap

101 N Carson Street Suite 3 Carson City, NV 89701 | (775) 684-5708
© 2010 All Rights Reserved. Privacy Policy and Disclaimer | About This Site

5/25/2011 12:49 PM

Exhibit F

## Here are some examples from past settlements:

| Creditor | Balance | Settlement Amount | Amount Saved | Settlement Percent | Percent Saved |
|---|---|---|---|---|---|
| FIA Card Services | $11,290.00 | $1,804.00 | $9,486.00 | 16% | 84% |
| American Express | $20,785.00 | $3,200.00 | $17,585.00 | 15% | 85% |
| FIA Card Services | $37,919.00 | $5,700.00 | $32,219.00 | 15% | 85% |
| Washington Mutual | $10,237.26 | $1,700.00 | $8,537.26 | 17% | 83% |
| Washington Mutual | $10,138.81 | $2,100.00 | $8,038.81 | 21% | 79% |
| HSBC | $3,731.52 | $732.37 | $2,999.15 | 20% | 80% |
| Chase Bank | $5,713.99 | $1,574.00 | $4,139.99 | 28% | 72% |
| Discover Card | $10,983.80 | $2,251.67 | $8,732.13 | 20% | 80% |
| Chase Bank | $3,793.33 | $948.00 | $2,845.33 | 25% | 75% |
| HSBC | $1,871.60 | $490.00 | $1,381.60 | 26% | 74% |
| Sears | $11,097.64 | $1,950.00 | $9,147.64 | 18% | 82% |
| HSBC | $15,075.31 | $3,500.00 | $11,575.31 | 23% | 77% |
| Citibank | $5,321.68 | $1,330.42 | $3,991.26 | 25% | 75% |
| Atlantic Credit & Finance | $7,912.79 | $2,000.00 | $5,912.79 | 25% | 75% |
| Wells Fargo Financial | $3,695.15 | $1,034.64 | $2,660.51 | 28% | 72% |
| Atlantic Credit & Finance | $5,996.88 | $1,600.00 | $4,396.88 | 27% | 73% |
| Wells Fargo Financial | $3,695.15 | $1,034.64 | $2,660.51 | 28% | 72% |
| Atlantic Credit & Finance | $4,782.51 | $1,400.00 | $3,382.51 | 29% | 71% |
| Discover Card | $5,795.11 | $1,448.77 | $4,346.34 | 25% | 75% |
| American Express | $13,817.04 | $4,000.00 | $9,817.04 | 29% | 71% |
| Sears | $17,467.61 | $4,500.00 | $12,967.61 | 26% | 74% |
| HSBC | $1,442.29 | $380.00 | $1,062.29 | 26% | 74% |
| American Express | $4,262.01 | $1,278.00 | $2,984.01 | 30% | 70% |
| GE | $3,482.66 | $1,219.00 | $2,263.66 | 35% | 65% |
| GE Capital | $1,275.78 | $470.00 | $805.78 | 37% | 63% |
| Advanta Business Cards | $18,632.99 | $4,800.00 | $13,832.99 | 26% | 74% |
| First National Bank of Omaha | $3,181.01 | $1,296.00 | $1,885.01 | 41% | 59% |
| Citibank | $7,134.14 | $2,496.95 | $4,637.19 | 35% | 65% |
| Citibank | $2,504.22 | $1,252.09 | $1,252.13 | 50% | 50% |
| Barclays | $4,940.50 | $1,800.00 | $3,140.50 | 36% | 64% |
| Bank of America | $42,293.80 | $6,280.00 | $36,013.80 | 15% | 85% |

| | | | | | |
|---|---|---|---|---|---|
| GT Services | $1,049.64 | $428.50 | $621.14 | 41% | 59% |
| Discover | $15,272.64 | $5,328.00 | $9,944.64 | 35% | 65% |
| Chase | $14,719.88 | $5,990.00 | $8,729.88 | 41% | 59% |
| Bank of America | $7,759.58 | $2,750.00 | $5,009.58 | 35% | 65% |
| American Express | $14,677.20 | $2,000.00 | $12,677.20 | 14% | 86% |
| Discover | $14,669.56 | $4,000.00 | $10,669.56 | 27% | 73% |
| Bank of America | $17,850.26 | $6,248.00 | $11,602.26 | 35% | 65% |
| Citibank | $14,615.07 | $5,846.03 | $8,769.04 | 40% | 60% |
| Bank of America | $12,808.36 | $4,483.00 | $8,325.36 | 35% | 65% |
| Capital One | $25,500.48 | $9,689.97 | $15,810.51 | 38% | 62% |
| Citibank | $12,095.14 | $3,700.00 | $8,395.14 | 31% | 69% |
| Bank of America | $12,060.91 | $4,221.32 | $7,839.59 | 35% | 65% |
| American Express | $11,442.90 | $3,500.00 | $7,942.90 | 31% | 69% |
| Citibank | $11,255.06 | $3,376.52 | $7,878.54 | 30% | 70% |
| Bank of America | $10,305.64 | $3,605.00 | $6,695.64 | 35% | 65% |
| Discover | $9,835.85 | $1,500.00 | $8,335.85 | 15% | 85% |
| Citibank | $9,783.02 | $3,913.20 | $5,869.82 | 40% | 60% |
| Chase | $35,959.24 | $5,981.74 | $29,977.50 | 17% | 83% |
| Washington Mutual | $9,637.18 | $2,900.00 | $6,737.18 | 30% | 70% |
| American Express | $9,007.36 | $1,000.00 | $8,007.36 | 11% | 89% |
| Bank of America | $8,777.51 | $3,075.00 | $5,702.51 | 35% | 65% |
| First Nat'l Bank of Omaha | $8,477.76 | $2,967.00 | $5,510.76 | 35% | 65% |
| Bank of America | $22,031.79 | $3,350.00 | $18,681.79 | 15% | 85% |
| GE Money Bank | $7,596.41 | $2,336.52 | $5,261.89 | 31% | 69% |
| American Express Travel | $7,247.79 | $1,088.00 | $6,159.79 | 15% | 85% |
| Discover | $6,902.39 | $2,200.26 | $4,702.13 | 32% | 68% |
| Bank of America | $6,545.44 | $1,836.00 | $4,709.44 | 28% | 72% |
| Citibank | $13,311.68 | $5,200.00 | $8,111.68 | 39% | 61% |
| Discover | $6,453.93 | $1,290.78 | $5,163.15 | 20% | 80% |
| Bank of America | $6,280.48 | $2,200.00 | $4,080.48 | 35% | 65% |
| GE Capital | $6,273.00 | $2,190.00 | $4,083.00 | 35% | 65% |
| Chase | $6,240.79 | $2,496.32 | $3,744.47 | 40% | 60% |
| 1st Financial | $6,233.44 | $2,805.00 | $3,428.44 | 45% | 55% |
| Bank of America | $6,194.19 | $1,116.00 | $5,078.19 | 18% | 82% |
| Chase | $5,808.91 | $2,060.00 | $3,748.91 | 35% | 65% |
| Chase | $5,715.57 | $1,143.11 | $4,572.46 | 20% | 80% |
| US Bank | $5,677.52 | $1,136.00 | $4,541.52 | 20% | 80% |