THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
BRYSON CITY DIVISION

CIVIL CASE NO. 2:11cv26

| | |
|---|---|
| ROBERT STEWART, an individual, and others similarly situated, </br></br> Plaintiff, </br></br> vs. </br></br> LEGAL HELPERS DEBT RESOLUTION, LLC, a Nevada limited liability company; MACEY, ALEMAN, HYSLIP & SEARNS, an Illinois general partnership; CDS CLIENTS SERVICES, INC., a California corporation; JEFFREY HYSLIP, an individual; and LINDA CAROL, an individual, </br></br> Defendants. | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Defendants' Motion to Compel Arbitration. [Doc. 26]. Also pending before the Court are the following motions: Plaintiff's Motion Requesting Judicial Notice [Doc. 5]; Plaintiff's Motion for Partial Summary Judgment [Doc. 7]; Defendants Legal Helpers Debt Resolution, LLC and Macey, Aleman, Hyslip & Searns and CDS Client

Services, Inc.'s Motion to Dismiss [Doc. 22]; and Defendants Jeffrey Hyslip and Linda Carol's Motion to Dismiss [Doc. 24].

## I.     PROCEDURAL AND FACTUAL BACKGROUND

The Plaintiff, a resident of North Carolina, initiated this action in the Macon County General Court of Justice, Superior Court Division, against the Defendants Legal Helpers Debt Resolution, LLC ("LHDR")[1]; the law firm Macey Aleman, Hyslip & Searns ("Law Firm"); attorney Jeffrey Hyslip ("Hyslip"); attorney Linda Carol ("Carol"); and CDS Client Services, Inc. ("CDS"). [Doc. 1-1]. In his Complaint, the Plaintiff asserts claims for declaratory relief, rescission, and damages arising from unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1, *et seq.*, legal malpractice, negligence, and consumer fraud.[2] The Plaintiff further seeks to

---

[1] LHDR is identified in the caption of the Complaint as Legal Helpers Debt Resolution, PLLC. [Doc. 1-1 at 1]. In the body of the Complaint, the Plaintiff identifies LHDR as "Legal Helpers Debt Resolution, *LLC*, a/k/a Legal Helpers Debt Resolution, PLLC" and alleges that it is a Nevada limited liability company. [Id. at 2] (emphasis added). The Defendants assert that the correct designation is "LLC" and not "PLLC." [Doc. 26 at 1 n.1].

[2] Specifically, the Plaintiff asserts the following causes of action against the Defendants: a claim for declaratory relief to the effect that the services provided by CDS and LHDR constituted illegal debt adjusting and the unauthorized practice of law, and therefore, the parties' contract is *void ab initio* (Count I); a claim for rescission of an illegal and unconscionable contract against LHDR (Count II); claims for unfair and deceptive trade practices against LHDR (Count III), the Law Firm (Count IV), and CDS (Count V); claims for unjust enrichment against CDS (Count VI) and LHDR, the Law Firm, and Hyslip (Count VII); a claim for legal malpractice against Hyslip, the Law Firm, and LHDR (Count VIII); a claim for negligence against Carol (Count IX); and a claim for

2

represent a class of North Carolina residents, who from June 9, 2007 to the present, entered into contracts for legal services with LHDR and who paid "advance fees" for such services. [Id. at ¶¶14-19]. The Defendants removed the action to this Court on July 11, 2011. [Doc. 1].

The Complaint alleges that on June 1, 2010, the Plaintiff received a direct mail solicitation from LHDR, offering debt negotiation services. [Id. at ¶¶ 20, 24]. The Plaintiff called the toll free number on the solicitation and spoke to a financial advisor. [Id. at ¶ 25]. After discussing his financial situation with the advisor, the Plaintiff entered into an Attorney Retainer Agreement ("ARA" or "Agreement") with LHDR. [Id. at ¶ 28]. The ARA authorizes LHDR to negotiate and modify the Plaintiff's unsecured debt in exchange for certain fees. [ARA, Doc. 1-1 at 27-30]. Included among these fees is an obligation to pay 15% of the total scheduled debt to a separate entity, CDS. [Id. at ¶ 31]. It is alleged that LHDR uses CDS to handle negotiations for debt adjusting under the ARA. [Id. at ¶ 33].

The Complaint alleges that LHDR represented to the Plaintiff that it was a law firm authorized to provide legal services in North Carolina. [Id. at ¶ 38]. It is alleged that as of May 4, 2011, however, the only attorney employed by

---

consumer fraud against LHDR, the Law Firm, and Hyslip (Count X).

LHDR who was properly licensed to provide legal services in North Carolina was Defendant Carol. None of the services provided to the Plaintiff through LHDR, however, were actively performed by Carol. [Id. at ¶¶ 40-42]. Defendant Hyslip, an LHDR attorney not licensed to practice in North Carolina, purported to represent the Plaintiff on behalf of LHDR. [Id. at ¶ 43].

The Complaint alleges that to date, the Plaintiff has paid the total sum of $8,658.36 under the ARA but has received no offers to settle his debts. [Id. at ¶ 52]. It is alleged that LHDR has advised the Plaintiff that it will do nothing to settle his debts until he has paid all payments due under the ARA, a total of $25,975.20, which is an amount equal to 60% of his original total outstanding debt. [Id. at ¶ 53].

The Defendants contend that the ARA requires the Plaintiff to submit to arbitration of his claims. [Doc. 26]. With respect to arbitration, section XVIII of the ARA provides as follows:

> **XVIII. Arbitration:** In the event of any claim or dispute between Client and LHDR related to the Agreement or related to any performance of any services related to this Agreement, such claim or dispute shall be submitted to binding arbitration upon the request of either party upon the service of that request. The parties shall initially agree on a single arbitrator to resolve the dispute. The matter may be arbitrated either by the Judicial Arbitration Mediation Service or American Arbitration Association, as

> mutually agreed upon by the parties or selected by the party filing the claim. The arbitration shall be conducted in either the county in which Client resides, or the closest metropolitan county. Any decision of the arbitrator shall be final and may be entered into any judgment in any court of competent jurisdiction. The conduct of the arbitration shall be subject to the then current rules of the arbitration service. The costs of arbitration, excluding legal fees, will be split equally or be born[e] by the losing party, as determined by the arbitrator. The parties shall bear their own legal fees.

[ARA, Doc. 1-1 at 30].

## II. STANDARD OF REVIEW

The parties do not dispute that the contract at issue is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.* ("FAA"). The FAA provides that any written provision to resolve by arbitration a controversy arising pursuant to a contract involving commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 2 of the FAA reflects "both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." AT&T Mobility LLC v. Concepcion, __ U.S. __, 131 S.Ct. 1740, 1745, 179 L.Ed.2d 742 (2011) (internal quotation marks and internal citations omitted). "In line with these principles, courts must place arbitration

5

agreements on equal footing with other contracts and enforce them according to their terms." Id. ( internal citations omitted).

The FAA constitutes a "body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GmbH, 206 F.3d 411, 417 n.4 (4th Cir. 2000) (citation omitted). In light of the liberal federal policy in favor of arbitration, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc., 380 F.3d 200, 204 (4th Cir. 2004) (citation and emphasis omitted).

In determining whether the dispute at issue is one which should be resolved though arbitration, this Court "engage[s] in a limited review to ensure that the dispute is arbitrable -- i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." Murray v. United Food and Commercial Workers Int'l Union, 289 F.3d 297, 302 (4th Cir. 2002) (citation omitted).

## III. DISCUSSION

### A. Arbitration of Claims against Non-Signatories

The Plaintiff first contends that the language of the arbitration provision limits its applicability solely to LHDR as the signatory to the ARA. As such, the Plaintiff argues, he cannot be compelled to arbitrate his claims against any non-signatories to the agreement.

"Generally, arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Int'l Paper Co., 206 F.3d at 416-17 (internal quotation marks and citation omitted). "It is well-established, however, that a nonsignatory to an arbitration clause may, in certain situations, compel a signatory to the clause to arbitrate the signatory's claims against the nonsignatory despite the fact that the signatory and nonsignatory lack an agreement to arbitrate." Am. Bankers Ins. Group, Inc. v. Long, 453 F.3d 623, 627 (4th Cir. 2006).

At the outset, the Court notes that the Plaintiff's contention that the Law Firm is a distinct entity from LHDR and thus not a party to the ARA [Doc. 31 at 5] is baseless. The ARA expressly provides as follows:

> I. Parties and Purposes: This Agreement for legal services is entered into on the date shown below between Legal Helpers Debt Resolution, LLC, *also known as the law firm of Macey, Aleman, Hyslip &*

7

> *Searns (hereinafter referred to as LHDR)* and ROBERT STEWART (hereinafter referred to as Client) relating to advice, counseling, analysis and negotiation services in regard to Client's unsecured debt and related financial circumstances ....

[ARA, Doc. 1-1 at 27] (emphasis added). The plain language of the ARA makes clear that the reference to "LHDR" within the ARA expressly includes both LHDR and the Law Firm. As a named party to the ARA, the Law Firm therefore may enforce the arbitration provision against the Plaintiff.

The Plaintiff further contends that as non-signatories of the ARA, attorneys Hyslip and Carol are not entitled to seek arbitration of the Plaintiff's claims against them. [Doc. 46 at 4-7]. Non-signatories to an arbitration agreement, however, may enforce an arbitration agreement executed by other parties "under ordinary state-law principles of agency or contract." Long v. Silver, 248 F.3d 309, 320 (4th Cir. 2001), *overruled on other grounds*, Hertz Corp. v. Friend, 130 S.Ct. 1181, 1190-92, 175 L.Ed.2d 1029 (2010). "Under the theory of agency, an agent can assume the protection of the contract which the principal has signed." Collie v. Wehr Dissolution Corp., 345 F.Supp.2d 555, 562 (M.D.N.C. 2004); Davidson v. Becker, 256 F.Supp.2d 377, 383-84 (D. Md. 2003). Here, the Plaintiff has alleged that attorneys Hyslip and Carol were acting in their capacities as members of LHDR. [Doc.

8

1-1 at ¶¶ 9, 10, 40, 43]. Thus, while attorneys Hyslip and Carol did not sign the ARA, their status as agents of LHDR enables them to rely on the ARA to compel the Plaintiff to arbitration. See Collie, 354 F.Supp.2d at 562.

Although a non-signatory to the agreement, CDS is also entitled to enforce the arbitration agreement between the Plaintiff and LHDR. The Fourth Circuit has recognized that a nonsignatory to an arbitration clause may compel a signatory to arbitrate "when the signatory is equitably estopped from arguing that a nonsignatory is not a party to the arbitration clause." Am. Bankers Ins. Group, Inc., 453 F.3d at 627. "Equitable estoppel precludes a party from asserting rights he otherwise would have had against another when his own conduct renders assertion of those rights contrary to equity." Int'l Paper, 206 F.3d at 417-18 (internal quotation marks and citation omitted). "In the arbitration context, the doctrine recognizes that a party may be estopped from asserting that the lack of [another's] signature on a written contract precludes enforcement of the contract's arbitration clause when [the party] has consistently maintained that other provisions of the same contract should be enforced to benefit him." Id. at 418.

9

Applying these principles, the Fourth Circuit applies the following test to determine when equitable estoppel should apply against a signatory to an arbitration agreement:

> [E]quitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate.

Brantley v. Republic Mortg. Ins. Co., 424 F.3d 392, 395-96 (4th Cir. 2005) (internal quotation marks, brackets, and citation omitted). "Because this legal test examines the nature of the signatory's underlying allegations against the nonsignatory, courts should examine the underlying complaint to determine whether estoppel should apply." Am. Bankers Ins. Group, Inc., 453 F.3d at 627.

In the present case, the Plaintiff alleges that LHDR relies upon and uses CDS to handle negotiations for debt adjusting under the ARA [Doc. 1-1 at ¶ 33], and that the ARA obligates the Plaintiff to pay 15% of the total scheduled debt to be settled to CDS [Id. at ¶ 31]. In Count I of the Complaint, the Plaintiff seeks a declaration that the services provided by CDS and LHDR pursuant

10

to the ARA constitutes illegal debt adjusting. [Id. at ¶ 56]. The Complaint further asserts that the activities of LHDR and CDS constitute unfair and deceptive trade practices (Counts III, IV, and V), and that the proceeds received from CDS under the ARA were the result of illegal debt adjusting and thus constitute unjust enrichment (Count VI). The Plaintiff's claims against CDS arise out of and relate directly to this Agreement. The Plaintiff cannot assert such claims against CDS and yet deny CDS the right to demand arbitration in accordance with the parties' contract. See Am. Bankers, 453 F.3d at 627.

Additionally, "equitable estoppel is warranted when the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." Brantley, 424 F.3d at 396 (internal quotation marks, alterations, and citations omitted). Here, the Plaintiff has alleged that CDS engaged in concerted misconduct with LHDR, a signatory to the ARA. [See ARA, Doc. 1-1 at ¶¶ 30, 31, 33, 56]. As such, equitable estoppel precludes the Plaintiff from arguing that CDS as a non-signatory is not entitled to enforce the arbitration agreement.

11

CDS is further entitled to enforce the arbitration agreement due to its status as a third party beneficiary of the ARA. See Brantley, 424 F.3d at 396-97. The ARA obligates the Plaintiff to pay CDS a percentage of the total scheduled debt. [ARA, Doc. 1-1 at ¶ 31]. This contractual provision clearly demonstrates the signatories' intent to provide a benefit to CDS under the Agreement. See Raritan River Steel Co. v. Cherry, Bekaert & Holland, 329 N.C. 646, 652, 407 S.E.2d 178, 182 (1991) (noting that "intent to benefit is the determining factor" in establishing a third party's status as intended beneficiary of contract).

For all of these reasons, the Court concludes that the Defendants, both signatories and non-signatories alike, are entitled to enforce the arbitration agreement set forth in the ARA.

### B. LHDR's Capacity

Next, the Plaintiff argues that as a foreign limited liability company that failed to obtain a certificate of authority from the State of North Carolina, LHDR lacked the capacity or authority to enter into a contract for professional legal services, and therefore, the parties' arbitration agreement is invalid. [Doc. 31 at 6-8].

12

"The law is well settled in this circuit that, if a party seeks to avoid arbitration and/or a stay of federal court proceedings pending the outcome of arbitration by challenging the validity or enforceability of an arbitration provision on any grounds that exist at law or in equity for the revocation of any contract, the grounds must relate specifically to the arbitration clause and not just to the contract as a whole." Snowden v. CheckPoint Check Cashing, 290 F.3d 631, 636 (4th Cir. 2002) (internal quotation marks and citations omitted). Thus, "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445-46, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006). Here, the Plaintiff's challenge to the "capacity" and "authority" of LHDR as an unregistered foreign limited liability company to enter into an agreement with a resident of North Carolina does not relate to the arbitration clause specifically. Rather, the Plaintiff's challenge calls into question the validity of the ARA as a whole. See Snowden, 290 F.3d at 638 (concluding that plaintiff's assertion that defendant was not state licensed as money lender was challenge to validity of contract as a whole and did not relate to validity of arbitration agreement specifically). Because the validity of the entire agreement is an issue that is reserved for the arbitrator,

13

it cannot serve as a basis to deny the motion to compel arbitration in this case. See id.

### C. Unconscionability

The Plaintiff next contends that the arbitration provision of the ARA is both procedurally and substantively unconscionable. [Doc. 46 at 7-11].

The question of unconscionability is one of state law. See, e.g., Perry v. Thomas, 482 U.S. 483, 492 n.9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987). Here, it is alleged that the ARA was entered into in North Carolina. [Doc. 1-1 at ¶ 12]. Accordingly, the Court will apply the substantive law of North Carolina to determine whether the contract was unconscionable.

Unconscionability is an affirmative defense, and the party asserting it has the burden of proof. Tillman v. Commercial Credit Loans, Inc., 362 N.C. 93, 102, 655 S.E.2d 362, 370 (2008). "A court will find a contract to be unconscionable only when the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other." Id. at 102-03, 655 S.E.2d at 369 (citation omitted). A party asserting the defense of unconscionability must prove that the contract is both procedurally and

14

substantively unconscionable. Id. at 102, 655 S.E.2d at 370. "[P]rocedural unconscionability involves 'bargaining naughtiness' in the form of unfair surprise, lack of meaningful choice, and an inequality of bargaining power." Id. at 102-03, 655 S.E.2d at 370 (citation omitted). "Substantive unconscionability, on the other hand, refers to harsh, one-sided, and oppressive contract terms." Id.

In the present case, the Plaintiff's sole argument regarding procedural unconscionability is that "[t]he chasm of legal understanding and negotiating skills between LHDR . . . and the Plaintiff is overwhelming." [Doc. 46 at 7]. As the North Carolina Court of Appeals has noted, however:

> [B]argaining inequality alone generally cannot establish procedural unconscionability. Otherwise, procedural unconscionability would exist in most contracts between corporations and consumers. There would nearly always be some degree of 'inequality of bargaining power.

Westmoreland v. High Point Healthcare, Inc., ___ N.C. App. ___, 721 S.E.2d 712, 717 (2012). Such statement is all the more true with respect to contracts between consumers and lawyers. Therefore, the fact that LHDR may have had legal knowledge and negotiating skills superior to that of the Plaintiff,

15

without more, does not render the parties' arbitration agreement procedurally unconscionable.[3]

The Plaintiff next argues that the provisions in the arbitration agreement requiring the parties to pay their own legal fees and to share the costs of arbitration renders the arbitration agreement substantively unconscionable. The Plaintiff's argument that arbitration would subject him to prohibitively high fees, however, is simply speculative. First, the ARA calls for arbitration through either the Judicial Arbitration Mediation Service (JAMS) or the American Arbitration Association (AAA), two well-known arbitration forums, both of which are consumer friendly and affordable. Under JAMS, the consumer's fees for arbitration is only $250.[4] Under the AAA, individual consumers with claims under $10,000 are responsible for one-half of the arbitrator fees up to a maximum of $125; for claims not exceeding $75,000, the maximum fee for which an individual consumer is responsible is $375.[5]

---

[3] An arbitration clause in an engagement letter proposed by an attorney is not unconscionable and does not rise to the level of being unethical. RPC 107.

[4] See JAMS Consumer Arbitration Policy: Minimum Standards of Procedural Fairness (eff. July 15, 2009), available at http://www.jamsadr.com/consumer-arbitration (last visited May 29, 2012). A true and accurate copy of this document is filed in the record as Doc. 51-1.

[5] See AAA Consumer Arbitration Costs, Administrative Fee Waiver, and Pro Bono Arbitrators, available at http://www.adr.org (last visited May 29, 2012). A true and accurate copy of this document as it appears on the AAA's website is filed in the record

16

Further, while each party is required to bear their own attorney's fees, the Plaintiff has not shown that the costs of retaining counsel for the purposes of arbitration would be any more cost prohibitive than retaining counsel for the purposes of maintaining this action in federal court. As such, the Plaintiff has failed to established that the legal fees provision has in any way "deterred [him] from attempting to vindicate his rights by means of a full and fair arbitration proceeding." Bradford v. Rockwell Semiconductor Sys., Inc., 238 F.3d 549, 558 (4th Cir. 2001).

Further, it should be noted that the arbitration provision does not preclude the Plaintiff from selecting the arbitrator. Indeed, the provision permits the arbitrator to be selected from one of two national arbitration entities either by mutual agreement of the parties or by the filing party, thereby ensuring the neutrality of the arbitrator appointed. Additionally, the arbitration agreement provides for arbitration in a convenient forum -- i.e., the Plaintiff's county of residence or the closest metropolitan county. As such, it cannot be argued that the forum provision is fundamentally unfair or disproportionately one-sided, or that it would cost the Plaintiff money for travel and lodging.

---

as Doc. 51-2

For all of these reasons, the Court concludes that the Plaintiff has failed to demonstrate that the arbitration agreement is procedurally and substantively unconscionable.

### D. Arbitration of Class Claims

The parties are in agreement that arbitration of the class claims set forth in the Plaintiff's Complaint would not be appropriate. [See Doc. 31 at 8; Doc. 32 at 11-12]. Accordingly, these class claims will be stayed pending the resolution of the Plaintiff's non-class claims that proceed to arbitration. See Cannon v. GunnAllen Financial, Inc., No. 3:06-0804, 2007 WL 189601, at *8 (M.D. Tenn. Jan. 22, 2007) (staying class claims pending resolution of plaintiff's non-class claims in arbitration).

## O R D E R

**IT IS, THEREFORE, ORDERED** that the Defendants' Motion to Compel Arbitration [Doc. 26] is **GRANTED** and arbitration of the Plaintiff's individual claims against the Defendants is hereby **COMPELLED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion Requesting Judicial Notice [Doc. 5]; Plaintiff's Motion for Partial Summary Judgment [Doc. 7]; Defendants Legal Helpers Debt Resolution, LLC and Macey, Aleman, Hyslip

& Searns and CDS Client Services, Inc.'s Motion to Dismiss [Doc. 22]; and Defendants Jeffrey Hyslip and Linda Carol's Motion to Dismiss [Doc. 24] are **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that this action, including the class claims set forth in the Complaint, is **STAYED** pending the arbitration of Plaintiff's non-class claims.

The Clerk of Court is directed to administratively close this case pending arbitration.

**IT IS SO ORDERED.**

Signed: June 1, 2012

Martin Reidinger
United States District Judge