# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### BRYSON CITY DIVISION
### CIVIL CASE NO. 2:11-CV-26-MR-DLH

| | |
|---|---|
| ROBERT STEWART, an individual, and others similarly situated, ) ) ) ) | |
| Plaintiff, ) ) | **MEMORANDUM DECISION AND ORDER** |
| vs. ) ) | |
| LEGAL HELPERS DEBT RESOLUTION, LLC, et al., ) ) ) | |
| Defendants. ) ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Confirmation of Arbitration Award solely as to Defendant CDS Client Services, Inc. [Doc. 79]. For the reasons that follow, the Court will grant the Plaintiff's motion.

## FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiff, a resident of North Carolina, initiated this action in the Macon County, North Carolina, General Court of Justice, Superior Court Division, against the Defendants Legal Helpers Debt Resolution, LLC ("LHDR"); the law firm Macey, Aleman, Hyslip & Searns ("Law Firm"); attorney Jeffrey Hyslip ("Hyslip"); attorney Linda Carol ("Carol"); and CDS

Client Services, Inc. ("CDS"). [Doc. 1-1]. In his Complaint, the Plaintiff seeks declaratory relief, rescission, and damages based on claims of unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1, legal malpractice, negligence, and consumer fraud. The Plaintiff further sought to represent a class of North Carolina residents, who from June 9, 2007 to the present, entered into contracts for legal services with LHDR and who paid "advance fees" for such services. [Id. at ¶¶14-19]. The Defendants removed the action to this Court on July 11, 2011. [Doc. 1].

The Complaint alleges that on June 1, 2010, the Plaintiff received a direct mail solicitation from LHDR, offering debt negotiation services. [Id. at ¶¶ 20, 24]. The Plaintiff called the toll free number on the solicitation and spoke to a financial advisor. [Id. at ¶ 25]. After discussing his financial situation with the advisor, the Plaintiff entered into an Attorney Retainer Agreement ("ARA") with LHDR. [Id. at ¶ 28]. The ARA authorized LHDR to negotiate and modify the Plaintiff's unsecured debt in exchange for certain fees. [Doc. 1-1 at 27-30]. Included among these fees was an obligation to pay 15% of the total scheduled debt to a separate entity, CDS. [Id. at ¶ 31]. It is alleged that LHDR used CDS to handle negotiations for debt adjusting under the ARA. [Id. at ¶ 33].

The Complaint further alleges that LHDR represented to the Plaintiff

that it was a law firm authorized to provide legal services in North Carolina. [Id. at ¶ 38]. It is alleged that as of May 4, 2011, however, the only attorney employed by LHDR who was properly licensed to provide legal services in North Carolina was Defendant Carol. None of the services provided to the Plaintiff through LHDR, however, were actively performed by Carol. [Id. at ¶¶ 40-42]. Defendant Hyslip, an LHDR attorney not licensed to practice in North Carolina, purported to represent the Plaintiff on behalf of LHDR. [Id. at ¶ 43].

The Complaint alleges that to date, the Plaintiff has paid the total sum of $8,658.36 under the ARA but has received no offers to settle his debts. [Id. at ¶ 52]. It is alleged that LHDR advised the Plaintiff that it will do nothing to settle his debts until he has paid all payments due under the ARA, a total of $25,975.20, which is an amount equal to 60% of his original total outstanding debt. [Id. at ¶ 53].

The Defendants asserted that the terms of the ARA required the Plaintiff to submit any dispute against them to arbitration and, therefore, Defendants filed a Motion to Compel Arbitration. [Doc. 26]. On June 1, 2012, the Court entered an Order granting the Defendants' motion to compel arbitration. [Doc. 55]. The Court further ordered that all pending motions would be denied as moot, and that the Plaintiff's class claims

would be stayed pending the arbitration.  [Id. at 2].

Prior to the arbitration, the Plaintiff agreed to a confidential settlement with every defendant except CDS.  [SEALED Doc.  64-1]. Pursuant to such agreement, Plaintiff and Defendants LHDR, Law Firm, Hyslip, and Carol, have resolved all issues among them regarding Plaintiff's individual claims. [Id.].

On April 29, 2013, Plaintiff and Defendant CDS proceeded to arbitration.    [Doc. 79-1 at 1].   At the time the arbitration was conducted, CDS was represented in this Court by the Asheville law firm of Roberts & Stevens, P.A. [Docket Sheet]. Counsel representing Defendant CDS at the arbitration, however, was attorney William R. Mitchell, of San Juan Capistrano, California.  [Doc. 79-1 at 2].  At arbitration, Plaintiff presented three claims against CDS:  (1) the contract between Plaintiff and LHDR was void and therefore rescission relief as against CDS was warranted; (2) CDS was engaged in the unauthorized practice of law in North Carolina and Plaintiff was damaged thereby; and (3) CDS violated North Carolina's Debt Adjusting Act and North Carolina's Unfair and Deceptive Trade Practices Act entitling Plaintiff to damages.  [Doc. 79-1 at 7].

At the conclusion of the arbitration, the Arbitrator found in favor Plaintiff on only the last of his three claims.   The Arbitrator held that

Defendant CDS had violated the North Carolina Debt Adjusting Act by unlawfully acting as an intermediary for Plaintiff in contravention of N.C. Gen. Stat. § 14-423(2). [Id.]. The Arbitrator further held that CDS's violation of the Debt Adjusting Act also constituted an unfair and deceptive trade practice under N.C. Gen. Stat. § 75-1.1(a). [Id.]. The Arbitrator found that CDS received from Plaintiff $1,701.83, for its services, and Plaintiff, therefore, was damaged in such amount. [Id.]. The Arbitrator then trebled this amount to $5,105.49 pursuant to N.C. Gen. Stat. § 75-16. [Id.]. Further, the Arbitrator held that Plaintiff was entitled to recover attorney's fees from CDS in the amount of $5,000.00, raising the subtotal of Plaintiff's award to $10,105.49. [Id. at 8]. From this subtotal, the Arbitrator held that Plaintiff must reimburse CDS $637.50, which amount was one half of the arbitration fee of $1,275.00. [Id.]. Plaintiff's total arbitration award against CDS, therefore, equaled $9,467.99, as of June 13, 2013, the date of the award. [Id.].

Following the arbitration, counsel with Roberts & Stevens, P.A., moved to withdraw from further representing Defendant CDS in this Court. [Doc. 58]. By Order entered June 12, 2013, the Court granted said motion and directed the Clerk to mail of copy of the Order to CDS's arbitration attorney, Mr. Mitchell, in California. [Doc. 59]. After permitting counsel with

Roberts & Stevens, P.A., to withdraw from further representing CDS in this Court, no other attorney entered an appearance on behalf of Defendant CDS herein. On May 8, 2014, the Court entered an Order that, *inter alia*, directed CDS to file a notice of appearance within fourteen days of said entry date listing counsel retained to represent it in this Court or suffer the entry of default.[1] [Doc. 77 at 3]. On May 13, 2014, Plaintiff filed his motion to confirm the arbitration award against CDS. [Doc. 79]. Also on that date, Plaintiff filed a dismissal of the class claims in this action. [Doc. 78]. Plaintiff's Motion for Confirmation of Arbitration Award solely as to Defendant CDS, the only unresolved matter remaining in this lawsuit, is thus ripe for review.

## DISCUSSION

The Supreme Court has made clear that Congressional policy, specifically a preference for the arbitration of disputes under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), when the parties to a contract so agree, favors such manner of resolution over litigation.

> Section 2 [of the FAA] is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement

---

[1] On May 27, 2014, since no counsel had entered an appearance for Defendant CDS as of that date, the Clerk entered default against CDS. [Doc. 82].

within the coverage of the Act.

Moses Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24 (1983); in accord Rainwater v. Nat'l Home Insurance Co., 944 F. 2d 190, 194 (4th Cir. 1991) (per curiam). To come within the purview of the FAA, 9 U.S.C. § 2 provides in pertinent part that a written provision in "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract … shall be valid, irrevocable, and enforceable[.]" Id. There is no question but that the ARA contract evidences transactions involving interstate commerce. The Court thus turns to the relevant provision contained within the ARA to which the parties[2] agreed:

> **XVIII. Arbitration:** In the event of any claim or dispute between Client and LHDR related to the Agreement or related to any performance of any services related to this Agreement, such claim or dispute shall be submitted to binding arbitration upon the request of either party upon the service of that request. The parties shall initially agree on a single arbitrator to resolve the dispute. The matter may be arbitrated either by the Judicial Arbitration Mediation Service or American Arbitration Association, as mutually agreed upon by the parties or selected by the party filing the claim. The arbitration shall be conducted in either the county in which Client resides, or the closest metropolitan county. Any decision of the arbitrator shall be final and may be entered into any judgment in any court of competent jurisdiction. The conduct of the arbitration shall be

---

[2] In its Order Compelling Arbitration, the Court held that CDS, while a non-signatory to the ARA, was entitled to enforce the ARA's arbitration clause as against the Plaintiff. [Doc. 55 at 9].

subject to the then current rules of the arbitration service. The costs of arbitration, excluding legal fees, will be split equally or be born[e] by the losing party, as determined by the arbitrator. The parties shall bear their own legal fees.

[Doc. 1-1 at 30].

From the plain language of this ARA provision, the Court concludes that this constitutes an agreement between the parties that they would arbitrate any disputes arising from the ARA or the performance thereunder. Defendant CDS, through counsel, participated in the arbitration with Plaintiff, and has filed nothing in this Court since that time. The fact that Plaintiff's dispute with CDS was subject to arbitration and properly arbitrated is therefore uncontested.

The Court now considers the merits of Plaintiff's motion to confirm the final award rendered by the arbitrator. Consistent with the statutory framework, Plaintiff made application to the Court to confirm the final award by filing his motion "in the manner provided by law for the making and hearing of motions[.]" 9 U.S.C. § 6. [Doc. 79]. As required by 9 U.S.C. § 13, the party seeking to confirm an arbitration award must file with the Clerk of Court certain documents, including but not limited to, the agreement containing the arbitration clause, the award, and those papers bearing upon the parties' application to confirm, modify, or correct the award submitted previously to any other court. Id. § 13(a)-(c). The documents

8

relevant to FAA § 13 have been filed and are a part of the record before the Court. [Docs. 1-1; 79-1; 79-2]. The Court concludes that Plaintiff's filings comply with 9 U.S.C. § 13 and establish the basis for confirming the final award. As noted by the Fourth Circuit, there is little left for this Court to do.

> A confirmation proceeding under 9 U.S.C. § 9 is intended to be summary: confirmation can only be denied if an award has been corrected, vacated, or modified in accordance with the Federal Arbitration Act. Under the Act, vacation of an award is obtainable by serving a motion to vacate within three months of the rendering of the award. 9 U.S.C. § 12.

Taylor v. Nelson, 788 F.2d 220, 225 (4th Cir. 1986).

Defendant CDS has not filed a motion either to vacate[3] or to modify[4] that arbitration award under 9 U.S.C. § 10. In fact, CDS has taken no action in this case since the conclusion of the arbitration and is in default. Since CDS has filed no motions concerning whether the final award should be vacated, corrected, or modified, the Court concludes that it must confirm the final arbitration award in favor of Plaintiff and against Defendant CDS.

---

[3] Section 10 of the FAA sets forth the permissible grounds for seeking the vacatur of an award. Such grounds include but are not limited to evidence showing that an award was procured by fraud, the arbitrator was not impartial, the arbitrator engaged in procedural misconduct during the arbitration, or the arbitrator exceeded her powers. 9 U.S.C. § 10(a)(1)-(4).

[4] Section 11 of the FAA sets forth the permissible grounds for seeking modification of an award. Such grounds include but are not limited to evidence showing that the award contained material miscalculation of figures, the arbitrator awarded upon a matter not submitted, or the award is imperfect in form not affecting the merits. 9 U.S.C. § 11(a)-(c).

## ORDER

Accordingly, **IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Confirmation of Arbitration Award [Doc. 79] is **GRANTED.**

**IT IS FURTHER ORDERED,** pursuant to 9 U.S.C. §§ 2, 6, and 9, that the final arbitration award of the Arbitrator [Doc. 79-1] rendered June 13, 2013, is **CONFIRMED** as part of the Judgment of this Court.  In accordance with the confirmation of the final arbitration award, Plaintiff shall have and recover against Defendant CDS Client Services, Inc., the principal amount of $5,105.49, plus attorneys' fees in the amount of $5,000.00, less Plaintiff's share of the arbitration fee of $637.50, for a total award of $9,467.99, and interest pursuant to 28 U.S.C. § 1961 on the amounts not yet collected and still due and owing from June 13, 2013, until the date of collection.

**IT IS SO ORDERED.**

Signed: September 23, 2014

Martin Reidinger
United States District Judge